WILLIS *v.* STATE

[No. 172, October Term, 1953.]

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Louis H. Cohen,* with whom were *Samuel Gordon* and *Gordon & Cohen* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Walter W. Dawson, State's Attorney for Montgomery County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Charles M. Willis, a building contractor, of Montgomery County, was convicted by the Circuit Court for Montgomery County of obtaining four loads of concrete from Maloney Concrete Company, Inc., a Delaware corporation, by false pretense. He has appealed here from the judgment of conviction.

The indictment charged that on May 12, 1953, defendant, by a false pretense made to Lewis Armstrong, which was not "a mere promise for future payment not intended to be performed," obtained from Maloney Concrete Company, Inc., 20 cubic yards of concrete of

the value of $285.60, the property of that corporation, with intent to defraud.

Defendant applied to the State's Attorney for Montgomery County for the names of the witnesses he intended to call and also a statement of the false pretense intended to be given in evidence. In compliance with defendant's application, the State's Attorney furnished him the names of five witnesses and a statement that the false pretense intended to be given in evidence was a check for the sum of $285.60, drawn on May 12, 1953, on the Farmers Banking and Trust Company of Montgomery County, payable to Maloney Concrete Company, Inc., and signed by defendant at the time of delivery of the last load of concrete.

Defendant pleaded not guilty and was tried before the Court without a jury. The first witness called by the State, Charles P. Maloney, Jr., vice president of the concrete company, testified that defendant's order for the concrete was received by telephone at the company's plant at Rockville on May 13, 1953, and the record in his office indicated that the concrete was delivered C. O. D. It was undisputed that four truck loads of concrete, each containing five cubic yards, were delivered that afternoon to defendant at his building site on Aspen Hill Road.

The State also produced Lewis Armstrong, one of the truck drivers, who presented the four delivery tickets to defendant after delivering the fourth load. On the fourth ticket were the letters "C. O. D." Armstrong testified that defendant walked to the side of an automobile, wrote a check for the amount shown on the tickets, and handed him the check without comment. It was undisputed that the check was dated May 12 but that it was actually written on May 13.

The State further showed that Armstrong delivered the check to the company's office upon his return to the plant, and the check was deposited in bank within two days. About one week later the check was returned unpaid with the notation "Insufficient funds."

Defendant swore that he had no intention of defrauding the company, but that on the contrary he thought he had enough money on deposit in his account at the Farmers Banking and Trust Company to cover the check. He stated that about a week later, when William R. Feeney, one of the salesmen for the company, came to see him, he found he had a balance of only a few dollars in his account. He explained to the Court that in May, 1953, he was building 51 houses, and that he had ample equity therein to enable him to pay the bill, but that he had made an error in figuring his balance on deposit. It was conceded that after he was arrested, but before his preliminary hearing, he paid the full amount of the check.

Defendant moved for a directed verdict of acquittal, but the trial judge overruled his motion, and found him guilty and sentenced him to be confined in the Maryland House of Correction for a period of three months.

The original False Pretense Act, enacted by the Maryland Legislature in 1836, provides as follows:

"Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor, and being convicted thereof shall be liable, at the discretion of the court, to be punished by fine and imprisonment, or by confinement in the penitentiary for not less than two years nor more than ten years, as the court shall award; * * * and provided also, that a mere promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section. * * *" Laws 1835, ch. 319, Code 1951, art. 27, sec. 165, as amended by Laws 1953, ch. 197.

In order to convict an accused on the charge of obtaining money or property by false pretenses, the State must show that there was a representation of an existing

fact made with intent to defraud, and that the operation of such representation as a deception induced a transfer and the obtaining of the money or property by the person committing the fraud to the loss of another. *Simmons v. State*, 165 Md. 155, 167 A. 60.

Thus, in *State v. Bundrock*, 49 S. D. 483, 207 N. W. 484, where the accused had purchased goods which he received in two separate deliveries and gave a worthless check after the second delivery, covering both deliveries, the Court held that he was not guilty of the statutory crime of obtaining property by false pretenses, because he did not induce the vendor to part with the goods in reliance upon any false representation.

At the trial in the Court below defendant claimed that the indictment charged a violation of Section 165 of Article 27 of the Code, the original False Pretense Act. The State, on the contrary, claimed that the indictment charged a violation of the Worthless Check Act.

The Worthless Check Act, which was originally enacted by Chapter 281 of the Laws of 1914, and finally reenacted by Chapter 483 of the Laws of 1941, is codified in Section 167 of Article 27 of the Code. This Act provides that any person who, with intent to cheat or defraud another, shall obtain money, credit, goods or anything of value by means of a check drawn on any bank not indebted to the drawer, or where the drawer shall not have provided for the payment, and the same be not paid upon presentation, shall be deemed to have obtained such money, credit, goods or things of value by means of a false pretense. The Act expressly declares that the giving of such a check shall be *prima facie* evidence of intent to cheat or defraud, provided that if such person shall be a *bona fide* resident of the State of Maryland and shall within ten days thereafter deposit with the drawee of the check funds sufficient to meet the same, with all costs and interest which may have accrued, he shall not be prosecuted under this Act.

It was obviously because of the difficulty so frequently encountered in proving fraudulent intent that the Legis-

lature provided in the Worthless Check Act that the giving of a worthless check raises a *prima facie* presumption of an intent to defraud. In a prosecution under this Act the burden is on the accused to show that he had no intent to defraud, and the presumption may be rebutted by proof of proper facts negativing a fraudulent intent.

Under the law of Maryland a violation of the original False Pretense Act and a violation of the Worthless Check Act are separate and distinct criminal offenses. We recognize, however, that although a worthless check was given in a fraudulent transaction, the State may prosecute under the original False Pretense Act. In *Lyman v. State,* 136 Md. 40, 50, 109 A. 548, 9 A. L. R. 401, the Court recognized the difference by pointing out that no prosecution, by indictment or otherwise, for violation of the Worthless Check Act may be commenced until after the expiration of the period of ten days. Judge Pattison, speaking for the Court, there said: "In that time opportunities of escape would be afforded the offender, and in many instances, he, by reason of such delay, would evade prosecution, although it could have been shown * * * that he had made in connection with the giving of such worthless check many false statements as to existing facts, clearly showing an intent to cheat and defraud."

Article 21 of the Maryland Declaration of Rights guarantees that in all criminal prosecutions every man has a right to be informed of the accusation against him. The rule is established in Maryland that an indictment for a statutory crime is sufficient if it follows the language of the statute and is sufficiently specific to inform the accused of the particular charge against him. Every indictment for either a common-law or statutory crime must characterize the crime and describe the particular offense with such reasonable certainty that the accused will be enabled to prepare his defense and, if necessary, plead the judgment as a bar to any subsequent prosecution for the same offense. *Armacost v.*

*State,* 133 Md. 289, 293, 294, 105 A. 147; *Richardson v. State,* 175 Md. 216, 218, 200 A. 362; *State v. Monfred,* 183 Md. 303, 304, 37 A. 2d 912; *State v. Wheatley,* 192 Md. 44, 50, 63 A. 2d 644; *Lambert v. State,* 193 Md. 551, 556, 69 A. 2d 461; *Lano v. State,* 195 Md. 359, 361, 73 A. 2d 222; *Lano v. State,* 195 Md. 363, 366, 77 A. 2d 125.

The Legislature has laid down the following rule on the sufficiency of indictments for false pretenses: "In any indictment for false pretenses it shall not be necessary to state the particular false pretenses intended to be relied on in proof of the same, but the defendant, on application to the State's attorney before the trial, shall be entitled to the names of the witnesses and a statement of the false pretenses intended to be given in evidence." Laws 1835, ch. 319, Code 1951, art. 27, sec. 694.

In accordance with that statutory provision, the State's Attorney before the trial in the case at bar informed defendant that the false pretense intended to be given in evidence was the check for $285.60 given by defendant to the concrete company. But the law in this State is clear that a bill of particulars in a prosecution for false pretenses is not a part of the indictment. In *Jules v. State,* 85 Md. 305, 36 A. 1027, the Court remarked that a bill of particulars in a false pretense case may be excepted to when it fails to satisfactorily impart the information to which the defendant is entitled, but it cannot be demurred to in the same sense that an indictment may be. We specifically hold that a bill of particulars cannot convert an indictment charging a violation of the original False Pretense Act into an indictment charging a violation of the Worthless Check Act.

It is obvious that the indictment in this case charged defendant with a violation of the original False Pretense Act, not a violation of the Worthless Check Act. This is apparent both from what the indictment alleged as well as from what it did not allege. First, it alleged that the false pretense was not "a mere promise for future payment not intended to be performed," following the language of the proviso in Section 165 that "a mere

promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section." Section 167 contains no such provision. Secondly, the indictment did not charge a false pretense by means of a worthless check, which is the gravamen of the crime created by the Worthless Check Act.

Since the indictment in this case charged a violation of the original False Pretense Act, not the Worthless Check Act, the State had the burden of proving that defendant was motivated by a fraudulent intent in inducing the vendor to part with its property and had knowledge that the check would not be honored on presentation for payment, and also that the vendor was deceived by false representation embodied in the check or extrinsic thereto and was induced thereby to part with the property. *Kaufman v. State,* 199 Md. 35, 85 A. 2d 446. It is self-evident that the State, in order to convict for obtaining money or property by false pretenses, must, as in any other prosecution, prove as a fact every element necessary to constitute the crime. *MacEwen v. State,* 194 Md. 492, 501, 71 A. 2d 464.

When a criminal charge has been tried by the court sitting without a jury, an appeal may be taken as provided by law, and on appeal the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction. The verdict of the trial court shall not be set aside on the evidence unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Criminal Rules of Practice and Procedure, rule 7(c) ; *Edwards v. State,* 198 Md. 132, 81 A. 2d 631, 83 A. 2d 578, 26 A. L. R. 2d 874; *Anello v. State,* 201 Md. 164, 93 A. 2d 71.

At the trial of this case defendant emphatically declared that he never had any intention to defraud the vendor. In explaining how he happened to give the truck driver a check which was returned by the bank unpaid, he testified as follows: "I thought I had enough money

in the bank to cover it. I had run my balance down on my check book and I thought I had the money, and I went ahead and ordered the concrete and gave the check. About a week later * * * Mr. Feeney, I believe it was, came out and showed me the check and told me it came back. I went out and called the bank and found I didn't have it. So I told him, 'I am in a spot right now. I don't know what to do. I will give Mr. Maloney a note or something to the title company and let the title company pay him just as soon as the settlement is made on some of these houses.' I thought I had plenty of property and other tangible things, that I had considerable equity in, to insure payment."

It was not denied that the vendor expected payment upon delivery of the concrete. Nor was it disputed that Mr. Maloney, vice president of the company, promptly sent Mr. Feeney, one of the salesmen, to defendant to ask him why the bad check was given and whether he would make it good, and the salesman was unable to collect. The evidence also showed that Mr. Maloney conferred with defendant several times, and defendant each time told him: "I don't have the money now. Give me a little time."

Nevertheless, defendant declared that he was the owner of valuable real estate in Montgomery County, and that, even if he had intended to cheat the vendor, it could have protected itself from any possible loss by filing a mechanic's lien against his property. When asked by the Court why he was so slow in paying the bill, he explained that his bank would not loan him any more money at that time, and he had to wait until the work on each house was completed and the title company had paid the subcontractors.

We are convinced that although defendant knew that the concrete was delivered C. O. D., and although he did not pay the bill in full until two and a half months later, yet the State failed to produce evidence to support the charge that defendant bought the concrete with intent to defraud. It is entirely possible that a building

contractor engaged in business on such a large scale could make a mistake of several hundred dollars on the stubs of his check book or elsewhere in his calculations. It is also understandable that when a building contractor, who has as many as 51 houses under construction, makes an error in his calculations, he might have difficulty in paying a bill even as small as $285.60.

For these reasons we find that the verdict of the Circuit Court was clearly erroneous. The judgment of conviction will therefore be reversed.

*Judgment reversed, and case remanded for a new trial, the costs to be paid by the County Commissioners of Montgomery County*