MARR *v.* STATE

[No. 99, September Term, 1961.]

*Decided February 15, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Louis E. Carliner* for the appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *James W. McAllister, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Thomas E. Marr was tried before a court and jury on three indictments charging him with forgery, uttering, passing worthless checks, and false pretenses on three separate occasions. At the conclusion of the State's case, he moved for a directed verdict, which the court granted as to the first three counts in each indictment. The court ruled that it would permit the jury to consider the fourth count in each indictment. The defense then rested. At the conclusion of the court's charge both counsel for the State and Counsel for the accused stated that they did not "wish any further instructions or take any exceptions." The jury found the defendant guilty on each count, and the court imposed a sentence of three years in each case, to run concurrently. The appeal challenges only the sufficiency of the evidence.

The State moved to dismiss the appeal on the ground that the appellant did not print in his record extract all of the evidence necessary for a consideration of the questions presented, as required by Maryland Rule 828 b 1 (b). The State complains that the appellant failed to reproduce the three checks offered in evidence. The explanation appears to be that these State exhibits were lost or mislaid, and are not included in the transcript. Their absence cannot be blamed upon the appellant. The testimony in the record extract described the checks in detail, and they also appear to be quoted in the earlier counts of the indictments. The State also complains of the omission of certain testimony corroboratory of the identification of the defendant by the witnesses Hartman, Springer and Shinosky. The omitted testimony was relevant, but cumulative. The appellant does not dispute the fact that these witnesses identified him as the man who cashed two of the checks.[1] Under the circumstances there is room for a differ-

---

1. The appellant, in proper person, wrote to the Clerk of this Court, subsequent to the argument of his case, claiming that the appellant's brief did not contain testimony favorable to him. He claimed that on cross-examination (1) Hartman changed his story, (2) Shinosky admitted that he was only 90 per cent certain in his identification, and (3) Springer testified he had picked Marr

ence of opinion as to the necessity for printing cumulative testimony, and we think the drastic penalty of dismissal should not be imposed. Cf. *Bornstein v. State Tax Comm.,* 227 Md. 331.

There was testimony that on June 18, 1960, a person subsequently identified as Marr, by Hartman and Springer, entered the package liquor store operated by Frank J. Springer and asked them to cash a check for him. The check was dated June 14, 1960, drawn on the Maryland Trust Company, payable to the order of Marion M. Burke, III for the sum of $124.65, and signed by D. S. & D. Dry Wall Co., by Robert A. Pierson. Neither Hartman nor Springer could swear positively that Marr indorsed the check in their presence, but an indorsement in the name of Marion M. Burke, III appeared on the back of the check as offered in evidence. Hartman testified that Marr was asked for his "identification" and showed it to Springer, who thereupon gave him the money. Out of the proceeds, Marr purchased a bottle of whiskey. The check was returned by the drawee bank with the notation that the signature was not authorized. The check introduced in evidence bore the further notation: "This is a stolen check."

On June 24, 1960, Marr entered the American Stores Company and asked the manager, Shinosky, to cash a check for $109.41. This check was dated June 23, 1960, payable to Marion M. Burke, III, and indorsed in that name. It was drawn on the Maryland Trust Company by D. S. & D. Dry Wall Co., by William T. Russell. Shinosky testified that he "okayed" the check because he knew of the drawer corporation, although he did not know the payee and "the identification he gave me was out of my neighborhood". Shinosky "thought the check had already been indorsed when I looked at it." Marr presented the check to a cashier, received the money, and then got a cart and proceeded to load it with groceries. The check was returned with a notation that the signature was unauthorized.

On June 23, 1960, a check for $89.54 was "okayed" by

out of a line-up, whereas Marr was never in a line-up. These inconsistencies, if they exist, go only to the weight of the testimony, a matter resolved by the triers of fact.

Myers, the manager of Ches-Park Food Market, Inc., an Acme store. This check was dated June 22, 1960, payable to Marion M. Burke, III, and indorsed in that name. It was drawn on the Maryland Trust Company by D. S. & D. Dry Wall Co., by William T. Russell. Myers identified the check and testified that it was returned with the notation "signature unauthorized." He did not see anyone indorse the check; he did not even see the person who had produced it. He thought one of his cashiers cashed it, after he, Myers, had approved it. The only other testimony connecting Marr with this transaction was the testimony of a police officer, Minderline, that the four "prosecuting witnesses" identified Marr at the preliminary hearing as the person who cashed the checks. This, of course, is contrary to Myers' testimony in court.

There was also testimony that Marr was picked up on a traffic charge on June 24, 1960, and gave the name of "Bruce Frizell", which proved to be not his name. A carbon copy of his signature in that name was put in evidence, but no handwriting testimony was offered.

The appellant contends that the evidence was legally insufficient to prove fraudulent intent, and that mere proof that the accused cashed checks, which were not drawn by authorized persons, does not make out a case of false pretenses. As to the Ches-Park check, he contends there was no proof that he was the person who cashed it.

It is quite true, as the appellant maintains, that there is a distinction between a prosecution under the Worthless Check Act (Code (1957), Art. 27, sec. 142), and the False Pretenses Act (Code (1957), Art. 27, sec. 140), in that the drawing of a check, for which there are insufficient funds in the bank, raises a *prima facie* presumption of an intent to defraud and this shifts the burden of proof. *Lyman v. State,* 136 Md. 40; *Willis v. State,* 205 Md. 118. But in a prosecution under sec. 140 the giving of a check may constitute the false pretense, although the State has the burden of proving that there was "a representation of an existing fact made with intent to defraud, and that the operation of such representation as a deception induced a transfer and the obtaining of the money or property by the person committing the

fraud to the loss of another." *Willis v. State, supra,* p. 123. Cf. *Levy v. State,* 225 Md. 201, 206.

In the instant case we think an inference can be drawn from the evidence that Marr falsely represented himself to be Marion M. Burke, III, the payee of the check and the person whose name was indorsed on the back. The testimony that he was asked for identification on two occasions permits such an inference, and that the representation was relied upon. If he had identified himself as someone other than the payee, it would seem that he would have at least been required to indorse the check, in accordance with the usual practice. See *Citizens' Nat. Bank v. Reynolds,* 126 N. E. 234, 236 (Ind.) and *State v. Hartman,* 273 S. W. 2d 198 (Mo.), Cf. *Coplin v. Maryland Trust Co.,* 222 Md. 119, 122.

Moreover, the notations upon the checks indicate that someone had drawn them without authority, and that one of the checks had been stolen. Here was evidence of a common scheme to defraud, and whether Marr drew them or not, he was clearly identified as the person who passed them, at least in two instances. Cf. *Ward v. State,* 219 Md. 559, 563, *MacEwen v. State,* 194 Md. 492, 501, and *King v. State,* 190 Md. 361, 372. This is not a case where there was a mere insufficiency of funds in bank. The checks were drawn by unauthorized persons, and the circumstances are such as to import knowledge, on his part, of the falsity of his representations.

While there is no direct evidence of identification of Marr, as the person who presented the third check, the fact that it was indorsed in the name of Burke and followed the exact pattern of the other checks could give rise, we think, to an inference of guilt, particularly where the jury had all of the exhibits and samples of handwriting to compare. The State was not obliged to offer expert testimony on the subject. Cf. *State v. Hartman, supra* (p. 207), and *Levy v. State, supra.* (p. 205).

*Judgments affirmed.*

BRUNE, C. J., filed the following dissenting opinion.

The instructions in this case leave much to be desired. As a statement of the law they failed to set forth the elements of

the charge which the State was bound to prove (as to which see *Willis v. State,* 205 Md. 118, 106 A. 2d 85). Not only that, but in explaining the meaning of § 140 of Art. 27 of the Code (1957), the general False Pretense Act, which was the basis of the only counts upon which the case was submitted to the jury, the trial judge clarified its meaning largely by reading from the definition of offenses under § 142, the Worthless Check Act,[1] although he had just directed a verdict of not guilty on the counts based upon that statute. It is true that, where a bad check is involved, § 140 and § 142 do overlap, and § 142 is broad enough to cover bad checks drawn by someone other than the defendant, who was here named as the drawer under the counts based on § 142. On the other hand, the trial court had also directed a verdict of not guilty on the counts based on uttering forged checks. There was nothing said in the instructions about the defendant having falsely represented himself as Burke, the specific misrepresentation upon which the court seems to rest its opinion, or specifically about any representation known to the defendant to be false; nor was the jury told that a false representation known to the defendant to be false was an essential ingredient of the offense.

Despite the absence of any exception to the charge, this is one of the rare cases in which I would examine the charge under what was Maryland Rule 739 g when this case was tried and argued on appeal (now Rule 756 g), and would reverse and remand the case for a new trial.

---

1. The presumption created by § 142 was not read.