STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN COVINGTON, JR., a/k/a DR. JOHN J. ROBERTS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 14, 1970—Decided January 27, 1971.

Before Julges CONFORD, KOLOVSKY and CARTON.

*Mr. George M. Dominguez,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. George N. Pappas,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by

KOLOVSKY, J. A. D. The issue presented on this appeal involves the interplay between the worthless check statute, now *N. J. S. A.* 2A:111-15 to 17, and the statute making it a misdemeanor to obtain money or property by. false pretenses, now *N. J. S. A.* 2A:111-1.

An indictment returned by the Essex County Grand Jury charged that on May 14, 1968, and contrary to the provisions of *N. J. S.* 2A:111-1, "John Covington a/k/a Dr. John J. Roberts [and] Barbara Delany a/k/a Barbara J. Roberts, * * * intending to cheat and defraud Pan American World Airways * * * did * * * unlawfully, knowingly and designedly falsely represent and pretend" to Pan American World Airways (Pan-Am) that they "had opened a checking account in the name of J. R. Enterprises, with the First National State Bank of New Jersey, and had established sufficient credit through said checking account for the payment of a check in the amount of $412.50, whereas in truth and in fact" as they knew they had not established sufficient credit with the bank for the payment of the check; that by means of said false representations and pretenses, Pan-Am being deceived thereby, defendants obtained three tickets for a trip from Newark to Nassau.

Thereafter defendant Covington retracted his prior plea of not guilty and pleaded guilty to the indictment. He was sentenced to a term of two to three years in State Prison to run concurrently with the sentence he was then serving in a federal penitentiary.

Defendant appeals, contending in the words of the only point in his brief that:

The judgment of conviction and the sentence imposed upon the defendant are illegal in that defendant was indicted, pled guilty and was sentenced for obtaining money by false pretenses under *N. J. S.*

2A:111–1, when the criminal acts charged were encompassed by the more specific statute dealing with the overdrawing of checking accounts, *N. J. S.* 2A:111–15.

If defendant be correct in his contention, then the maximum sentence to which he may be subjected for the criminal act charged is that provided in *N. J. S. A.* 2A:111–15, "a fine of not more than $1000 or * * * imprisonment for not more than 1 year or both," and the sentence imposed, 2 to 3 years in State Prison, although within the maximum authorized for a violation of *N. J. S. A.* 2A:111–1 (see *N. J. S. A.* 2A:85–7), is illegal.

Defendant's argument is bottomed on *State v. Morse,* 109 *N. J. Super.* 160 (App. Div. 1970) in which the court said,

Noting the magnitude and uniqueness of check frauds, * * * and that the elements of the crime of obtaining money under false pretenses, as alleged here, and uttering a worthless check are identical, we conclude that the Legislature consciously and deliberately intended that one uttering a worthless check in an amount greater than $200 should be indicted under the specific statute [*N. J. S. A.* 2A:111–15] and not the more general one [*N. J. S. A.* 2A:111–1] that had been previously enacted. [at 165]

See also *State v. Strickland,* 112 *N. J. Super.* 425 (App. Div. 1970); but *cf. State v. Gullo,* 112 *N. J. Super.* 476, (App. Div. 1970).

■ With all due deference and respect to the views thus expressed by another part of this court, we cannot concur therein. In our view, the mere fact that a worthless check is the *modus operandi* used in obtaining money or property by false pretenses does not bar a prosecution under *N. J. S. A.* 2A:111–1. The two statutes are an example of the very common situation in which criminal statutes overlap in prohibiting the same basic act and in which "the proper prosecuting authority in the sound exercise of the discretion committed to him may proceed under either act." *State v. States,* 44 *N. J.* 285, 292 (1965); see *State v. Fary,* 16 *N. J.* 317, 322–323 (1954); *State v. Reed,* 34 *N. J.* 554 (1961); *State v. White,* 105 *N. J. Super.* 234,

236–237 (App. Div. 1969), certif. den. 54 *N. J.* 242 (1969) ; *State v. Milano,* 94 *N. J. Super.* 337, 339–340 (App. Div. 1967) ; see also, *State v. Drake,* 79 *N. J. Super.* 458, 461– 463 (App. Div. 1963), in which the court rejected the claim that the enactment of *N. J. S. A.* 43:21–16(a) penalizing one who makes a false statement or representation to obtain or increase unemployment benefits precluded defendant's prosecution under *N. J. S. A.* 2A:111–1 for obtaining money under false pretenses.

As the court said in *State v. States, supra*:

> The mere fact that two statutes overlap in prohibiting the same act does not mean that the later law automatically repeals the earlier one *pro tanto*, or that an alleged offender can only be prosecuted for the more serious offense. Repeals by implication are not favored and it is a cardinal rule of statutory construction that both laws should be given effect if reasonably possible. It is not sufficient merely to show that a subsequent act covers some of the cases encompassed by the earlier one. The legislative intention to repeal must be manifest; the language must admit of no other reasonable interpretation. [44 N. J. at 291]

We find no incompatibility between the two statutes under consideration here. The history of the legislation and an analysis of the provisions of the two statutes, and particularly those relating to the differing nature and character of the proofs necessary to sustain conviction and the penalties imposed, convinces us that the enactment of what is now *N. J. S. A.* 2A:111–15 did not and was not intended by the Legislature to impliedly repeal so much of the general statute proscribing the obtaining of money or property under false pretenses (*N. J. S. A.* 2A:111–1) as includes the act of doing so through the use of worthless checks.

Determination of the legislative intent requires that we focus on 1919 when the Legislature enacted the worthless check statute (*L.* 1919, *c.* 72), which, as later amended, now appears as *N. J. S. A.* 2A:111–15 to 17 inclusive.

At that time the statute making it a misdemeanor to obtain money or property by false pretenses was to be found in *Comp. Stat.,* § 186 at 1800, and provided:

Any person who, knowingly or designedly, by color of any false token, counterfeit letter or writing, or false pretense or pretenses shall obtain from any person money, wares, merchandise, goods or chattels or valuable thing with intent to cheat or defraud any person of the same, shall be guilty of a misdemeanor.

The provisions of the present statute, *N. J. S. A.* 2A:111-1, are essentially the same:

Any person who, knowingly or designedly, with intent to cheat or defraud any other person, obtains any money, property, security, gain, benefit, advantage or other thing of value by means of false promises, statements, representations, tokens, writings or pretenses, is guilty of a misdemeanor.

Proof of defendant's actual intent to defraud was in 1919 and still is essential to sustain a conviction under *N. J. S. A.* 2A:111-1 and its predecessor statutes. *State v. Greco,* 29 *N. J.* 94, 98, 103 (1959) ; *State v. Fladger,* 94 *N. J. Super.* 205 (App. Div. 1967). Such proof may consist of circumstantial as well as direct evidence of the "words, acts and conduct of the accused," *State v. Allen,* 100 *N. J. Super.* 407, 419 (App. Div. 1968), dissenting opinion adopted by the Supreme Court, 53 *N. J.* 250 (1969).

However such proof is not to be found in the fact that a check delivered by defendant was not honored on presentation to the bank on which it was drawn. The statutory presumption found in the "worthless check" statute, discussed *infra* (*N. J. S. A.* 2A:111-16), is "not applicable to the prosecutions under *N. J. S.* 2A:111-1; * * * [in such prosecutions it is] incumbent upon the State to establish affirmatively an intent to cheat and defraud on the part of defendant." *State v. Fladger, supra,* 94 *N. J. Super.* at 208.

It is against this background that the Legislature adopted the "worthless check" act, *L.* 1919, *c.* 72, an act which, in the words of its introducer's statement, was "intended to make the law of New Jersey uniform with several other states which have passed the above statute." (*Senate Bill* No. 47, 1919).

The 1919 act provided:

1. Any person who, with intent to defraud, shall make or draw, or utter or deliver, any check, draft or order for the payment or money, upon any bank or other depositary, knowing at the time of such making, drawing, uttering or delivering that the maker, or drawer, has not sufficient funds in, or credit with, such bank or other depositary for the payment of such check, draft or order, in full, upon its presentation, shall be guilty of a misdemeanor, and punishable by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or both fine and imprisonment.

2. As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary; *provided*, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check, draft or order has not been paid by the drawee.

3. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary for the payment of such check, draft or order.

4. This act shall take effect immediately.

Amendments to the act adopted in 1930 (*L*. 1930, *c*. 121) and in 1965 (*L*. 1965, *c*. 184) (1) made the act also applicable to one acting as an agent or as an officer of a corporation; (2) authorized use of a certificate of protest as presumptive evidence instead of requiring the attendance of a witness from the drawee bank; (3) eliminated the five-day grace period provision, and (4) made the act applicable only to cases of checks in the amount of $200 or more. (The offense, in case of checks less than $200, was made a disorderly persons offense. See *N. J. S. A.* 2A:170–50.4 to 50.6 inclusive.)

The statute presently in force appears as *N. J. S. A.* 2A:111–15 to 17, inclusive, and reads as follows:

2A:111–15. *Overdrawing credit or checking account*

Any person who, for himself or as agent or representative of another person, or as an officer or agent of any corporation, or as a member of a partnership, with intent to defraud, makes, draws, utters or delivers a check, draft or order for the payment of money in an

amount of \$200.00 or more, upon any bank or other depository, knowing at the time of so doing that the maker, or drawer, has no funds or insufficient funds in, or credit with, such bank or other depository for the payment of such instrument, in full, upon its presentation, *although no express representation is made in reference thereto*, is guilty of a misdemeanor and shall be punished by a fine of not more than \$1,000.00, or by imprisonment for not more than 1 year, or both. [Emphasis added]

## 2A:111–16. Issuing bad check as evidence of intent to defraud

The making, drawing, uttering or delivering of a check, draft or order as stated in section 2A:111–15 of this title shall be prima facie evidence of intent to defraud, and the certificate of protest of nonpayment of same shall be presumptive evidence that there were no funds or insufficient funds in or credit with such bank or other depository and that the person making, drawing, uttering or delivering the instrument knew that there were no funds or insufficient funds in or credit with such bank or other depository.

## 2A:111–17. "Credit" defined

The work "credit" as used in sections 2A:111–15 and 2A:111–16 of this title shall be construed to mean an arrangement or understanding with the bank or depository for the payment of the check, draft or order.

Although an intent to defraud is an essential element of both the offense described in *N. J. S. A.* 2A:111–1 and that described in *N. J. S. A.* 2A:111–15, they define distinct albeit overlapping offenses. Not only the penalties imposed but also the nature and character of the proofs required to convict differ in each case. It was the latter consideration which primarily motivated the legislatures of the several states which adopted worthless check statutes. As was said by one of the drafters of the North Carolina bad check statute,

The problem was to frame an act which would be effective by avoiding the great practical difficulty of proving actual fraudulent intent in order to convict. * * * [5 *N. Car. L. Rev.* 185 (1927)]

238

See also, *Willis v. State*, 205 *Md.* 118, 106 *A.* 2d 85, 88 (Ct. App. 1954).

■ This is accomplished under the New Jersey worthless check statute by the presumption embodied in *N. J. S. A.* 2A:111–16. That presumption entitles the State, in case of a prosecution under *N. J. S. A.* 2A:111–15, to go to the jury even if the defendant comes forward with proof tending to negate an intent to defraud, unless the trial court determines in the factual context of the particular case that the evidence is insufficient as a matter of law to support a conviction. *State v. Pollack*, 43 *N. J.* 34, 42–43 (1964); see also, *State v. DiRienzo*, 53 *N. J.* 360, 378 (1969).

The very issue presented to us was before the Court of Appeals of Maryland in *Lyman v. State*, 136 *Md.* 40, 109 *A.* 548 (1920). In that case, defendant had been convicted of obtaining property by false pretenses, a violation of section 122 of the Code. He argued that since the legislature had adopted a worthless check statute in 1914 (section 123 of the Code) "there can be no prosecution under section 122 where the giving of a worthless check is involved, but in all such cases the prosecution must be under section 123." The court rejected defendant's contention.

■ To summarize, we conclude that *N. J. S. A.* 2A:111–1 and *N. J. S. A.* 2A:111–15 merely overlap and that the prosecution may elect under which statute it will proceed where the facts fit both. *Cf. State v. Reed*, 34 *N. J.* 554, 572–573 (1961); *State v. Johnson*, 67 *N. J. Super.* 414, 422–3 (App. Div. 1961).

Apposite is what this court said in *State v. White*, 105 *N. J. Super.* 234 (App. Div. 1969), in rejecting the contention that defendant could not be prosecuted under *N. J. S. A.* 2A:96–3 but could only be prosecuted under *N. J. S. A.* 2A:115–3.2:

When [*N. J. S.* 2A:96–3 is] compared with *N. J. S.* 2A:115–3.2, it appears plain that the respective statutes deal with separate and distinct crimes and the defendant could have been indicted under either. The nature and character of the proofs to sustain conviction

are not the same; neither are the penalties. It is fair and reasonable to assume that the Legislature intended to provide for a contingency that the State's proofs might not be sufficient to convict under *N. J. S.* 2A:115–3.2 but would be adequate to support a conviction under *N. J. S.* 2A:96–3. *State v. Bott,* 53 *N. J.* 391 (1969), and *State v. Serrano,* 53 *N. J.* 356 (1969), are plainly distinguishable. [at 236-237]

Further, "relevant practical factors as well as considerations of fair play, and the reasonable expectations of the Legislature and the public relating to control of the conduct proscribed, are permitted to influence the discretion of the proper authority as to the course to be followed." *State v. States, supra,* 44 *N. J.* at 292.

 Here, there can be no doubt but that the election made by the prosecutor was the proper one. As defendant himself conceded when he entered his plea of guilty and at the time of sentencing, his offense involved more than the mere issuance of a check on an account with insufficient funds. The presentence report reveals that defendant, falsely representing himself to be Dr. John Roberts, opened an account in a Newark bank with a check for $105,000 drawn on a Washington bank; that he returned the next day with his purported wife and had the funds transferred into separate accounts, on one of which was drawn the check given to Pan-Am for the airplane tickets to Nassau. The bubble burst when the $105,000 check was returned by the Washington bank "as being fraudulent."

The judgment is affirmed.