## LAWRENCE BROOKS v. STATE OF MARYLAND

[No. 131, September Term, 1976.]

*Decided May 4, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Melvin G. Bergman, Assigned Public Defender,* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The sole question presented in this case is whether the giving of a worthless check to a garageman in return for the release of a vehicle repaired by him constitutes a violation of Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 142, as last amended by Chapter 181 of the Acts of 1972. We hold that it does.

Appellant, Lawrence Brooks (Brooks), was first convicted in the District Court of Maryland in Prince George's County. He appealed to the Circuit Court for Prince George's County. Under Code (1974) § 12-401 (c), Courts and Judicial Proceedings Article, the appeal was tried de novo. We granted the writ of certiorari in order that we might consider the issue raised.

The facts are not in dispute. In fact, there was a stipulation as to them in the circuit court where the matter was heard by Judge Loveless without a jury. On November 21, 1974, Brooks took his truck to Potomac Ford-Truck Sales, Inc., for repairs. The cost of the repairs was $250. Brooks had had prior work done there for which he had given checks. His checks had always been good. At the close of that day he told the service manager that he needed his truck for work early the following morning. The truck was released to Brooks upon his presentation of a check in the amount of $250. The check was returned marked "insufficient funds." Brooks was notified. After more than 10 days had elapsed without his making the check good, he was charged under § 142. As of September 17, 1976, the date of trial in the circuit court, the check still had not been paid.

The statute under which Brooks was charged provides in pertinent part:

"Every person who, with intent to cheat and defraud another, shall obtain money, credit, goods,

services, release from any debt or obligation for services, or for materials or labor in the construction or repair of any building or buildings, wares or anything of value, five hundred dollars or more, by means of a check . . . upon any bank . . . where the drawer or drawers thereof, shall not have provided for the payment . . . and the same be not paid upon presentation, shall be deemed to have obtained such money, credit, goods, services, release, wares, or things of value by means of a false pretense . . . . Where the value of such money, credit, goods, services, release, wares, or anything of value is less than five hundred dollars, such person, upon conviction, shall be deemed guilty of a misdemeanor . . . . The giving of the aforesaid worthless check . . . shall be prima facie evidence of intent to cheat or defraud; provided that if such person shall be a bona fide resident of the State of Maryland and shall deposit with the drawee of such paper . . . within ten days thereafter funds sufficient to meet the same, with all costs and interest which may have accrued he shall not be prosecuted under this section, and no prosecution either by presentment, indictment or otherwise, shall be instituted or commenced until after the expiration of said period of ten days."

Brooks seizes upon our decision in *State v. Sinclair & Sinwellan Corp.*, 274 Md. 646, 337 A. 2d 703 (1975), and argues that his acts do not constitute a violation of the statute in question, stating that we there held "that the giving of a worthless check for a pre-existing debt was a civil matter and not a criminal charge as there was no reliance on the giving of the check for the work performed." It is his contention that the check here given was for a pre-existing debt and thus it does not come within the purview of the statute.

The trial judge pointed out that under Code (1957) Art. 63, § 41, the statute applicable at the time of this proceeding,

the garageman had a lien, that it "would not have given up this vehicle at the time the check was tendered if they had not felt that the check was good and valuable," that in so doing "they gave up this possessory right of a lien," which "was a right within the meaning of the statute . . . ."[1]

The statute creating the garageman's lien provides in pertinent part:

"Whenever a motor vehicle or any part thereof is left by the owner . . . in the custody of any corporation . . . for repair, rebuilding, storage, or for the purpose of having furnished for or on account of the same any parts, accessories, or tires, the corporation . . . in whose custody said motor vehicle or part thereof is left for all or any of the purposes aforesaid, shall have a lien on said motor vehicle . . . for all charges so incurred, and may lawfully retain the same until said charges have been paid, or until said lien is extinguished or discharged as hereinafter provided. Said lien shall be superior to the rights of the holders of conditional sale contracts, bills of sale, chattel mortgages or other liens or claims of any kind which are not theretofore executed and recorded or filed for record as required by law, but shall be subordinate thereto where the same have been theretofore executed and recorded as required by law. Surrender or delivery of any motor vehicle subject to the lien aforesaid shall operate as a waiver or extinguishment of the same as against third persons without notice thereof, but shall not operate as such waiver or extinguishment as against the owner or as against third persons with notice."

Provision for enforcement of the lien and determination of the rights of the parties is made in §§ 42-45 inclusive.[2]

---

1. The lien provided in Code (1957) Art. 63, § 41 is now found in Code (1975) § 16-202 (c), Commercial Law Article.

2. Now found in Code (1975) §§ 16-203 to 209, Commercial Law Article.

*Sinclair* concerned not § 142, but § 144 pertaining to a "person who shall obtain money, credit, goods, wares or anything of value . . . by means of a check, draft or any other negotiable instrument of any kind, with intent at the time of giving such instrument without the consent of such other to stop or countermand the payment of the same or otherwise to cause the drawee thereof to disregard or dishonor or refuse to recognize such instrument." It will be perceived immediately that § 142 is broader that § 144.[3] We held in *Sinclair* that no "money, credit, goods, or wares" was obtained for the check in question when given to an employee for services previously rendered by him. In *Sinclair* Judge O'Donnell traced for the Court the origin of §§ 142 and 144. He pointed out that § 144 was initially enacted by the General Assembly by Chapter 605 of the Acts of 1920 and that "it complemented what has come to be known as the Worthless Check Act, originally enacted by Ch. 281 of the Acts of 1914 and now codified as Art. 27, § 142."

The Court was concerned in *Draper v. State,* 231 Md. 423, 190 A. 2d 643 (1963), *cert. denied,* 381 U. S. 952 (1965), with a person charged with violating Code (1957) Art. 27, § 140 relative to false pretenses. He there induced a service station operator to release a vehicle upon presentation of a check. Judge Henderson said for the Court:

"This was also evidence, from which we think the jury could properly find the appellant guilty of false pretenses, under Code (1957), Art. 27, sec. 140, as well. The necessity for reliance stressed in *Levy v. State,* [225 Md. 201, 170 A. 2d 216, *cert. denied,* 368 U. S. 865 (1961)], and *Marr v. State,* 227 Md. 510, 515 [, 177 A. 2d 862 (1962)], is met in the instant case by the evidence that Draper falsely represented himself to be the payee of the check and that Fears released the car, without payment of the balance due of $4.74, relying upon the

3. However, we shall base our opinion here solely on the fact that Brooks in this case obtained something "of value."

validity of the forged check which he retained as security, at the appellant's request. We think this would be sufficient either under Code (1957), Art. 27, secs. 140 or 142. It is not contended that there was any lack of proof of fraudulent intent, under sec. 140." *Id.* at 426-27.

In *Bright v. State,* 76 Okla. Crim. 67, 134 P. 2d 150 (1943), the defendant was convicted under a statute making it a crime for any person to obtain "money, property, or valuable thing" by means of a false or bogus check. He claimed that the giving of a worthless check to a bank in satisfaction of a chattel mortgage did not constitute a violation of this statute since it was payment of a past-due obligation with a worthless check. The court said:

"Under the statute defining personal property it is clear that a promissory note, and chattel mortgage, would be considered as personal property and as a 'thing of value'. It is an evidence of a right of action and a written instrument by which a pecuniary obligation is acknowledged.

"The argument that the bank did not give up anything when the note and mortgage were surrendered, upon receipt of the bogus check, cannot be sustained. The evidence reveals that the chattel mortgage was marked paid. This released it from the files. If any other mortgage had been on file, it would have then become a prior lien upon the property and a valuable right would have been lost by the surrender of the mortgage and note." *Id.* at 73-74.

*See generally Judkins v. State,* 123 Ark. 28, 34, 184 S. W. 407 (1916); *Beasley v. People,* 168 Colo. 286, 288, 450 P. 2d 658 (1969); and cases collected in Annot., 59 A.L.R.2d 1159 (1958).

We pointed out in *Johanna Farms v. Elliott Equip. Co.,* 278 Md. 137, 149, 360 A. 2d 436 (1976), that under the garageman's lien statute surrender or delivery of a vehicle

does not operate as a waiver or extinguishment of the lien "against the owner or as against third persons with notice." However, under this statute the garageman is permitted to "retain the [vehicle] until said charges have been paid, or until said lien is extinguished or discharged as [t]hereinafter provided." In order for the garageman to proceed with execution of his lien by sale it is necessary for him to have possession. Thus, once the vehicle was delivered back to Brooks for the garageman to assert his lien it would have been necessary for him once again to obtain possession by legal process or otherwise. Moreover, once possession was delivered to Brooks he ran the risk of Brooks' selling the vehicle or executing a lien upon it to an innocent third party without notice of the garageman's lien. Accordingly, we have no difficulty in concluding that Brooks obtained something of value within the meaning of the statute when he procured the release of the vehicle to him in consideration of his worthless check.

> *Judgment affirmed; appellant to pay the costs.*