# HELEN KASHANSKY *v.* STATE OF MARYLAND

[No. 879, September Term, 1977.]

*Decided May 10, 1978.*

314

The cause was argued before THOMPSON, MASON and MacDANIEL, JJ.

*Victoria A. Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *David C. Driscoll, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Helen Kashansky, the appellant, was convicted in the Circuit Court for Montgomery County, of false pretenses by obtaining merchandise with a bad check which was not made good within 10 days. A sentence of eighteen months was imposed. On appeal, appellant attacks the admissibility of certain evidence and the correctness of the trial judge's instructions.

On October 1, 1976, David Kashansky entered a Radio Shack Store in Gaithersburg, Maryland and attempted to purchase a stereo receiver with a check. The store manager refused to accept the check because Mr. Kashansky did not have a driver's license or charge card. Mr. Kashansky then made a $60 cash deposit on the receiver, which the store put on "lay away." He stated his wife would come in later to write a check for the remaining balance. On October 3 Mr. Kashansky returned with his wife, the appellant, and appellant wrote a check for $348.09, which represented the balance owed on the receiver and the cost of two speakers.

Appellant's check was subsequently returned to the store from the bank marked "nonsufficient funds." After "a bit of trouble" trying to locate the Kashanskys, the store manager, some two weeks after the check had been returned, managed to contact Mr. Kashansky at his place of employment. At that time Mr. Kashansky said he would take care of the problem. Two or three more telephone calls followed, but some six weeks after the check had been returned the Kashanskys had not made the check good. The morning of trial, however, the Kashanskys presented a money order for the full amount.

The store manager lodged a complaint against appellant on November 5, 1976, and on November 30 appellant came voluntarily to police headquarters. There she submitted to arrest and made a statement admitting that she wrote the check to Radio Shack, but stated it was written with the understanding that her husband would deposit money in the account to cover the check.

At the trial the State, through Laura Benoit, branch manager of the Union Trust Company in Rockville, introduced a bank statement representing the joint account of David and Helen Kashansky. Ms. Benoit testified the statement reflected that a check in the amount of $348.09 was presented to the bank for payment on October 5. At that time, the balance in the Kashansky account was $68.23. Deposits of $100, $500, $94 and $360 were subsequently made on October 7, 15, 19 and 25 respectively. The October 15 deposit of $500, however, was made by a check which was returned unpaid. From October through the end of December, fifty checks were written on the account, and 17 were returned. Although at the end of October, the Kashanskys' account had a balance of $164.98, the account had a negative balance of $5.00 at the end of November and a negative balance of $12.19 at the end of December. Defense counsel entered an objection to this testimony on the basis that Ms. Benoit could not testify whether the checks had been written by David or Helen Kashansky.

The only defense witness was David Kashansky, who testified that although he and his wife wrote checks on the

joint account, he was solely responsible for putting money into the account and keeping track of finances. He also stated that between October 1 and October 3 he told appellant he was expecting a $500 check, which he would deposit to cover the Radio Shack purchase. When he was contacted by Radio Shack, he explained that the $500 check that was supposed to cover the purchase had bounced and offered to return the equipment but was told by Radio Shack that "it just wasn't their policy" to take back goods. Mr. Kashansky admitted to a worthless check conviction that he had incurred the previous year.

## I The Evidentiary Question

Appellant argues that the admission of the evidence concerning the 17 bad checks which were written between October 1 and December 31 was erroneous without a showing that the checks had been written by the appellant. In its brief the State argues that the admissibility of the evidence was harmless, but at oral argument conceded that its admission was erroneous.

Although we agree that the admission of the evidence was erroneous, we cannot agree that the error was harmless. There was evidence that appellant wrote the check at the request of her husband and only because Radio Shack would not accept his check without the presentation of a driver's license or a credit card. A fact finder could hardly hear the evidence that 17 other checks had been returned on the same joint account within a period of three months without drawing a prejudicial inference that appellant was probably involved in at least some of them, yet that inference may be entirely contrary to fact. It requires no citation of authority to show that appellant should not have been convicted on the acts of her husband. We will, therefore, reverse and remand the case for a new trial.

## II The Instructions

For the guidance of the trial judge on retrial, we deem it

advisable to discuss appellant's contention that the instructions shifted the burden of proof on the issue of fraudulent intent in violation of *Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975) and *State v. Evans,* 278 Md. 197, 362 A. 2d 629 (1976).[1] The instruction was based on an inference contained in *Md. Code,* Art. 27, § 142 (1976 Repl. Vol.). Thus, in order properly to address appellant's argument we must examine the effect of *Mullaney* and *Evans* on the Worthless Check Act before considering the actual instruction that was given. *Md. Code,* Art. 27, § 142 provides in part:

> "The giving of the aforesaid worthless check, draft or negotiable instrument, or of the credit card or purported credit authorization, shall be *prima facie evidence* of intent to cheat or defraud; provided that if such person shall be a bona fide resident of the State of Maryland and shall deposit with the drawee of such paper or the acceptor of the credit card or purported credit authorization within ten days thereafter funds sufficient to meet the same, with all costs and interest which may have accrued he shall not be prosecuted under this section, and no prosecution either by presentment, indictment or otherwise, shall be instituted or commenced until after the expiration of said period of ten days." (Emphasis added).

The term prima facie evidence as employed in § 142 is somewhat ambiguous as it is susceptible of two different meanings. The term can refer to the quantum of evidence necessary to warrant submission of the case to the jury or it can refer to shifting the burden of producing evidence. *See* 9 J. Wigmore, *Evidence* § 2494 (3d ed. 1940). Neither of these meanings was initially adopted by the Court of Appeals in

---

1. The State concedes that the instruction was unconstitutional but argues the error was harmless and was not preserved for appellate review. As we are reversing the judgment on other grounds, we need not consider whether the error was harmless or the objection was properly preserved.

construing the statute. Instead, the Court indicated that the Act shifted the burden of proof to the accused and relieved the State of the need to show fraudulent intent. *Marr v. State,* 227 Md. 510, 514, 177 A. 2d 862, 864 (1962); *Lyman v. State,* 136 Md. 40, 49-50, 109 A. 548, 552 (1920). More recently, however, the statute has been construed as creating a rebuttable presumption which casts the burden of showing the absence of a fraudulent intent on the accused. *See State v. Sinclair,* 274 Md. 646, 651-652, 337 A. 2d 703, 707 (1975); *Maki v. State,* 239 Md. 311, 314, 211 A. 2d 711, 713 (1965); *Flannigan v. State,* 232 Md. 13, 18, 191 A. 2d 591, 593 (1963); *Waye v. State,* 231 Md. 510, 513-514, 191 A. 2d 428, 430 (1963); *Willis v. State,* 205 Md. 118, 124-125, 106 A. 2d 85, 88 (1954); *Riggs v. State,* 34 Md. App. 324, 328-329, 367 A. 2d 22, 35 (1976); *Quinn v. State,* 1 Md. App. 373, 376, 230 A. 2d 368, 370 (1967). Construed as a rebuttable presumption § 142 simply means that once the prosecution has proved the underlying fact to which the presumption attaches, there is sufficient evidence for the jury to find fraudulent intent, although it is not compelled to do so even in the absence of any rebuttal evidence by the accused. As such, § 142 is more in the nature of a permissible inference rather than a true presumption. *See Evans v. State,* 28 Md. App. 640, 702, 349 A. 2d 300, 338-339 (1975), *aff'd,* 278 Md. 197, 362 A. 2d 629 (1976); Comment, *Unburdening the Criminal Defendant: Mullaney v. Wilbur and the Reasonable Doubt Standard,* 11 Har. C.R.-C.L. L. Rev. 390, 419 n. 129 (1976). *See also* W. LaFave and A. Scott, *Handbook on Criminal Law* § 8 at 51 (1972); Comment, *Statutory Criminal Presumptions: Reconciling the Practical With The Sacrosanct,* 18 U.C.L.A. L.Rev. 157, 158-159 (1970).[2] Interpreted in this manner, § 142 is in accord with the construction generally given worthless check statutes. *See State v. Haremza,* 213 Kan. 201, 515 P. 2d 1217 (1973); *Patterson v. Commonwealth,* 556 S.W.2d 909 (Ky. App. 1977).

---

2. The use of the term presumption can be very confusing. McCormick notes that one author has identified eight different uses of the term by the courts. C. McCormick, Handbook of the Law of Evidence § 342, p. 803 (2d ed. E. Cleary 1972). Traditionally presumptions deal with questions of law and are usually classified according to the interpretation given them by Morgan or Thayer and Wigmore. *See generally,* 9 J. Wigmore, Evidence §§ 2490-2492

W. LaFave and A. Scott, *Handbook on Criminal Law,* § 8 at 51 n. 51 (1972). *See also,* 35 A.L.R. 375 and 95 A.L.R. 486.

In considering the effect of *Mullaney* and *Evans* on the permissible inference contained in § 142 we start with the proposition that due process prevents an accused from being convicted absent proof beyond a reasonable doubt on each element of the offense charged. *Patterson v. New York,* 432 U. S. 197, 97 S. Ct. 2319, 2330, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur, supra,* 421 U. S. at 704, 95 S. Ct. at 1892; *In Re Winship,* 397 U. S. 358, 364, 90 S. Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *State v. Evans, supra,* 278 Md. at 206, 362 A. 2d at 635. The burden which the State must bear has two aspects: (1) the burden of producing evidence, and (2) the burden of persuasion. W. LaFave and A. Scott, *Handbook on Criminal Law* § 8 at 45 (1972). A permissible inference does not shift either of these burdens. *Dinkins v. State,* 29 Md. App. 577, 583, 349 A. 2d 676, 681, *aff'd,* 278 Md. 238, 362 A. 2d 91 (1976); *Evans v. State, supra,* 28 Md. App. at 703, 349 A. 2d at 339.[3]

---

(3d ed. 1940); Morgan, Some Observations Concerning Presumptions, 44 Harv. L. Rev. 906 (1931); J. Thayer, Preliminary Treatise on Evidence ch. 8 (1898). Under the Morgan approach a presumption shifts the actual burden of persuasion. However, under the Thayer-Wigmore approach the burden of persuasion does not shift but the burden of producing evidence does. The effect of this presumption was discussed in Evans v. State, *supra,* 28 Md. App. at 722-723, 349 A. 2d at 350 where we stated:

"A presumption in the Thayer-Wigmore tradition simply places upon a defendant the onus of producing evidence, or of relying at his risk upon evidence produced by the State, sufficient to generate a jury issue with respect to a particular defense. Once the issue is generated by evidence, the presumption totally dissipates (the bubble bursts) and the State assumes the burden of persuasion on that issue beyond a reasonable doubt. Since the presumption has totally served its purpose once a jury issue has been created, the jury never hears of the presumption. If the issue has not been generated by evidence, the jury never receives the issue. Once the issue is generated, the jury gets the issue with the burden of persuasion thereon falling upon the State. The preliminary skirmishing on the generation *vel non* of the jury issue is of no concern to the jury itself."

These uses of the term presumption can be compared with inferences which are no more than part of the inductive reasoning process by which proof of one fact leads to the existence of another fact. *See* Evans v. State, *supra,* 28 Md. App. at 702, 349 A. 2d at 338-339.

3. As a practical matter an inference may require the accused to produce evidence to negate an element of a crime or run the risk of conviction, but the Supreme Court has stated that this does not render the use of inferences unconstitutional. Barnes v. United States, 412 U. S. 837, 846 n. 11, 93 S. Ct. 2357, 2363 n. 11, 37 L.Ed.2d 380 (1973).

As such, statutes containing permissible inferences do not violate due process as long as the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt.[4] *See Barnes v. United States,* 412 U. S. 837, 843, 93 S. Ct. 2357, 2362, 37 L.Ed.2d 380 (1973); *Turner v. United States,* 396 U. S. 398, 416, 90 S. Ct. 642, 652, 24 L.Ed.2d 610 (1970); *Dinkins v. State, supra,* 29 Md. App. at 581, 349 A. 2d at 679-680.

In the instant case the trial judge, in instructing the jury on the applicable law, made the following comments concerning the permissible inference contained in § 142:

"In all criminal cases of which this is one, the burden is on the State to prove guilt beyond a reasonable doubt. There is no burden on the defendant in any criminal case.

"The State carries the burden throughout. . . . "[T]he giving of a worthless check or of a credit card of purported credit authorization shall be prima facie evidence of intent to cheat or defraud.

. . .

"Proof may be made by direct evidence or circumstantial evidence, or a combination of both;

---

4. While the Supreme Court has not specifically held that the due process clause requires use of the beyond a reasonable doubt standard, a number of courts and commentators have indicated the use of the standard is constitutionally mandated. *See* United States v. Johnson, 433 F. 2d 1160 (D.C. Cir. 1970); Patterson v. Commonwealth, *supra*; State v. Alcantara, 87 Wash. 2d 393, 552 P. 2d 1049 (1976); C. McCormick, Handbook of the Law of Evidence § 344 at 816 (2d ed. E. Cleary 1972); Comment, Unburdening the Criminal Defendant: Mullaney v. Wilbur and the Reasonable Doubt Standard, 11 Harv. C.R.-C.L. L. Rev. 390 (1976); Note, The Unconstitutionality of Statutory Criminal Presumptions, 22 Stan. L. Rev. 341 (1970); Comment, Statutory Criminal Presumptions: Reconciling the Practical with the Sacrosanct, 18 U.C.L.A. L.Rev. 157 (1970). *Cf.* Dinkins v. State, *supra,* 29 Md. App. at 581, 349 A. 2d at 680 (reasonable doubt standard applied). *See also* Ashford and Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165 (1969); Christie and Pye, Presumptions and Assumptions in the Criminal Law: Another View, 1970 Duke L.J. 919.

but in any event it must satisfy you beyond any reasonable doubt of guilt.

. . .

"While the giving of this check is prima facie evidence of guilt, the State has the burden to prove beyond any reasonable doubt the guilt as I have indicated to you, and the extent to which you believe the Defendant's evidence will help you to reject or accept an inference from the State's proof."

Although we do not think the State should have conceded the instruction shifted the burden of persuasion, we believe the instruction could be improved if reference to the statute and the term *prima facie* were omitted and the jurors were merely instructed that they are permitted, but not required, to infer the existence of an intent to defraud from the presentation of a worthless check not made good within ten days unless, considering all the evidence presented, they have a reasonable doubt as to the existence of such an intent. *See United States v. Gainey,* 380 U. S. 63, 71 n. 7, 85 S. Ct. 754, 759 n. 7, 13 L.Ed.2d 658 (1965).

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by Montgomery County.*