(Nos. 41582, 41583 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LESLIE WHITTAKER *et al.*, Appellants.

*Opinion filed June 29, 1970.*

492

CULBERTSON, J., took no part.

FREDERICK F. COHN and JULIUS LUCIUS ECHELES, both of Chicago, for appellants.

BERNARD L. OLTMAN, State's Attorney, of Pekin, (JAY H. JANSSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendants, Leslie Charles Whittaker and Joseph Everett Phipps, were charged under separate indictments with burglary and theft of property having a value in excess of $150. The cases were consolidated and tried by a jury. Both defendants were found guilty and sentenced to identical terms in the penitentiary of from 15 to 30 years for burglary, but no sentence was imposed on the theft charge. They prosecute this consolidated appeal claiming

a fatal variance between the allegations of the indictment and the proof at trial; that the proof regarding the value of the stolen property was faulty, and that the court ruled erroneously on the admission of certain instructions.

It was adduced at trial that at about 3:15 A.M., on November 20, 1966, Officer William Martin of the East Peoria Police Department, while patrolling, observed a 1956 Chevrolet station wagon travelling at an excessive rate of speed. He curbed the automobile and at about that time two additional officers arrived at the scene. Approaching the vehicle, the officers observed, in plain view, cartons bearing the legend "Atlas Juicer, Juicemaster Manufacturing Company"; a crowbar; several flashlights; gloves; a sledgehammer; acetylene cutting torches; axes; a cardboard box partially filled with various packages of cigarettes and candy bars; and the barrel of a rifle protruding from the front seat. In addition, the police found in the vehicle an I.B.M. electric typewriter, a transistor radio, a Friden calculator, three pistols, numerous rounds of ammunition and a grey steel cash box containing $48 in cash and a roll of coins bearing a wrapper from "Creve Coeur Manufacturing Company."

Following defendants' arrest, the police went to the building occupied by Creve Coeur and found that forced entry had been gained into the building. An examination revealed that cigarette and candy machines as well as a safe had been forced open.

Initially, we judge that there are no issues properly before us regarding the theft count, inasmuch as no judgment of conviction was entered on the jury verdicts finding both defendants guilty of theft.

Defendants contend that the indictment was faulty because it did not name the owner of the building burglarized, and did not indicate that the victim of the burglary was a corporation. Count I charged that the defendants "without authority, knowingly enter[ed] a building located on Muller

Road in East Peoria, Illinois, occupied by Creve Coeur Manufacturing Company and Juicemaster Manufacturing Company, with the intent to commit therein a theft . . . ." Defendants claim that it was imperative that the indictment allege ownership of the burglarized building and not merely occupancy. It is true that an allegation of ownership was once required (see *People* v. *Picard,* 284 Ill. 588), but we put an end to this "empty formality" in *People* v. *Stewart,* 23 Ill.2d 161, 168, and reaffirmed our position in *People* v. *Peck,* 29 Ill.2d 480, 484. Accordingly, an indictment alleging occupancy or possession of the burglarized premises in a named person is sufficient. Defendants further contend that the indictment is defective because it did not allege that Creve Coeur Manufacturing Company and Juicemaster Manufacturing Co. were corporations. They argue that because the word "company" can be used to describe a partnership, an individual and numerous other types of legal entities, their right to be secure from double jeopardy has been emasculated. The authority for defendants' position apparently stems from the court's ruling in *Wallace* v. *People,* 63 Ill. 451. In that case, defendant was indicted for larceny from the "American Merchants' Union Express Company." The court found the indictment defective because it was "not averred that the American Merchants' Union Express Company is a corporation." (63 Ill. at 452; see also, *Staaden* v. *People,* 82 Ill. 432; *People* v. *Brander,* 244 Ill. 26; *People* v. *Cohen,* 352 Ill. 380.) The rationale for this common-law requirement was to adequately inform the defendant of the charges against him and to protect him from possible double jeopardy. (See *State* v. *Hume,* 145 Me. 5, 70 A.2d 543, *State* v. *Clark,* 223 Mo. 48, 122 S.W. 665, 18 Ann. Cas. 1120.) Defendants admit that the form of the indictment was sufficient to inform them of the charges made so they could adequately prepare a defense. (*Cf. People* v. *Peck,* 29 Ill.2d 480.) Under common parlance, as well as under the

provisions of the Business Corporation Act (Ill. Rev. Stat. 1969, ch. 32, par. 157.9,) the use of the word "company" connotes corporate existence. In addition, the record indicates that both entities specified in the indictment were operating under a corporate form at the time of the burglaries. (See also Certified List of Domestic and Foreign Corporations, 1966, pp. 487, 2421.) Accordingly, we fail to see how defendants may be subjected to multiple prosecutions for the same offense. *State* v. *Hume* (Maine), 70 A.2d 543, 545.

Defendants next contend that the court committed error by improperly instructing the jury. People's instruction No. 3 reads as follows: "The Court instructs the jury as a matter of law that the rule which clothes every person accused of crime with the presumption of innocence, and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty of crime to escape, but is a humane provision of the law intended, as far as human agencies can, to prevent an innocent person from being convicted." Defendants argue that the instruction should not have been given because it informed the jury that the presumption of innocence does not apply to a guilty person, thereby confusing the jury, and it attempted to define reasonable doubt. People's instruction No. 10 reads as follows: "The Court instructs the jury that the State must prove beyond a reasonable doubt that the defendant is guilty of the offense charged in the indictment; however, the doubt to acquit the defendant must be a reasonable doubt. The State is not required to prove the defendant's guilt beyond all doubt, but beyond all reasonable doubt." Defendants argue that this instruction also attempted to define the concept of reasonable doubt and to diminish the burden of the State. While these instructions comment on reasonable doubt, they do not attempt to define it and so are totally unlike that given in *People* v. *Cagle*, 41 Ill.2d 528, 536, where we held

that prejudicial error was committed. Yet we feel that these instructions should not have been given because the term needs no elaboration, and we have so frequently discussed the futility of attempting to define or elaborate on it, that we expect the practice to be discontinued. (See *People v. Malmenato*, 14 Ill.2d 52, 61, and cases therein cited.) However, upon careful consideration of all the instructions given and read herein as a series, we find that no reversible error was committed.

Also, we find no error in the refusal of the trial court to give certain instructions tendered by the defendants. In each instance, where instructions were refused, our review of the record indicates that other similar instructions, adequately informing the jury of the applicable standards, were allowed.

Finally, defendants contend that People's instruction No. 2 violated their constitutional right to remain silent. The instruction states: "The Court instructs the Jury that if you find the exclusive possession, shortly after the commission of a theft or burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of guilt of the person having such possession, sufficient to authorize a conviction in the absence of any other evidence of facts or circumstances in evidence which leave in the mind of the jury a reasonable doubt as to the guilt of such person." They argue that instructing the jury with regard to this common-law presumption, amounted to a comment on their failure to testify and, as such, constituted a violation of their fifth amendment rights as set forth in *Griffin* v. *California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229. The presumption has existed in this jurisdiction since at least 1850 (*Jones* v. *People*, 12 Ill. 259) and continues today as a well settled principle. (See *People v. Hawkins*, 27 Ill.2d 339; *People* v. *Woods*, 26 Ill.2d 557; *People* v. *Fiorito*, 413 Ill. 123; IPI Criminal, sec. 13.21.)

The validity of its use as a jury instruction has been sustained even as to an attack identical to that raised here. *People* v. *Nilsson,* 44 Ill.2d 244, 247, *cert.* denied 38 L.W. 3488; *People* v. *Kulig,* 373 Ill. 102.

In *Griffin* v. *California,* the United States Supreme Court held that comment by a prosecutor in a State criminal trial regarding defendant's failure to testify amounted to an abridgement of the self-incrimination clause of the fifth amendment. Recently, however, the Supreme Court has had occasion to review the question of whether a statutory inference embodied in a jury instruction violated a defendant's fifth amendment right. In *Turner* v. *United States* (1970), 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642, the court had before it the question of whether the statutory presumption of knowledge of unlawful importation of heroin and cocaine, stemming from the fact of possession of those narcotic drugs, satisfied the criminal reasonable doubt standard of proof as to that element of the crime. In validating the presumption as to heroin but not as to cocaine, the court went on to state: "We therefore have little doubt that the inference of knowledge from the fact of possessing smuggled heroin is a sound one; hence the court's instructions on the inference did not violate the right of Turner to be convicted only on a finding of guilt beyond a reasonable doubt *and did not place impermissible pressure upon him to testify in his own defense."* (24 L. Ed. 2d at 624, emphasis added.) We perceive that the same reasoning must apply to the inference raised in the case at bar. The permissive inference of guilt (*People* v. *Fiorito,* 413 Ill. 123) flowing from the unexplained possession of recently stolen property, rests on the inherently strong probability of the inferred fact. Accordingly, we find that there is not only a rational connection between possession of recently stolen goods and an inference of guilt, (See *Tot* v. *United States* (1943), 319 U.S. 463, 87 L. Ed. 1519, 63

S. Ct. 1241) but also, under this particular inference, the fact inferred is more likely than not to flow from the proved fact on which it is made to depend. *Leary* v. *United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532; *Turner* v. *United States*, 24 L. Ed. 2d 610.

We can think of no more applicable factual setting in which this inference would play a valid role than in the case before us. Here, defendants were arrested at approximately 3:15 A.M. on the day of the burglary. In their investigations, the police determined that the burglary occurred at approximately 2:58 A.M. (A multiple electric receptacle was pulled from an outlet during the burglary and theft when the Friden calculator was taken. The electrical current was thereby shut off on a clock which stopped at that time.) Defendants had the unexplained possession of the stolen goods, some 18 minutes after perpetration of the crime. The jury was adequately instructed that no unfavorable inferences or conclusions against the defendants were to be drawn simply because they did not testify. (See *Turner* v. *United States.*) Moreover, this instruction placed no undue burden on defendants to explain their possession of the stolen property; possession could have been explained by either documentary evidence or the testimony of other witnesses. Accordingly, the use of this inference was proper in this case and there was no violation of defendants' fifth amendment rights.

For the foregoing reasons, the judgments of the circuit court of Tazewell County are affirmed.

*Judgments affirmed.*

Mr. JUSTICE CULBERTSON took no part in the consideration or decision of this case.