THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE HENRY HARRIS *et al.,* Defendants-Appellants.

(Nos. 70-59, 70-60 cons.;

Third District—April 6, 1971.

Theodore A. Gottfried, of Defender Project, of Ottawa, for appellants.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a conviction and sentence for the crime of burglary by defendants Willie Henry Harris and Frank Anderson Strowhorn. Defendants were indicted and, thereafter, convicted by a jury of the burglary of a fruit market.

The record disclosed that the Indiana Fruit Market in Kankakee, Illinois, was broken into between 9:00 and 1:00 P.M. on the evening of November 12, 1969, and that a 200 lb. cash register had been taken from the market.

On November 13, 1969, a Kankakee police officer testified that he was investigating the crime the morning following the burglary, and was watching a building at 552 E. Cypress Street. He observed defendants

Harris and Strowhorn walking between two buildings in the area and saw Strowhorn enter the Jones Cleaners building in the 500 block of Cypress Street. He saw Strowhorn and Harris make several trips up and down the stairs to the second floor of 552 Cypress. At about 10:30 he saw Tom Jones walk from between the two buildings and go up the stairs to the second floor of 552 Cypress and Jones came back down in a few minutes. He then testified that he saw Edward Riley come down the stairs, go into the cleaners, and then go back upstairs carrying a white canvas bag. Defendants Strowhorn and Harris then went upstairs and they came back down shortly. Following them, Mr. Riley and Mr. Coley Webb then came down the stairs carrying what appeared to be a heavy item in the white canvas bag. After Riley and Webb reached the bottom of the stairs, the officer said, all four men then began helping carry the bag, i.e., Riley, Webb, Harris and Strowhorn. The officer testified that they carried the bag for about 40 yards and he then arrested all four men. The officer also testified that Strowhorn was holding onto the canvas bag with the other three men and that the officer observed some elastic bandages on Strowhorn's wrists. There was a cash register in the bag when the four were arrested. The register had come from Indiana Fruit Market.

There was testimony by a fiancee of Mr. Strowhorn that she went to Mr. Strowhorn's room on the evening of November 12, 1969, at 7:00 P.M. and was there with him until 7:30 or 8:00 the next morning. She stated that Strowhorn did not leave while she was with him and she did not go to sleep that night until 1:00 or 2:00 A.M. She also testified that Strowhorn's arms were in a cast as both wrists were fractured in October 1969. Strowhorn also testified that his wrists were broken on October 20, 1969, and that on November 12 and 13 his wrists were irritable. The doctor who treated Strowhorn's fractures testified that Strowhorn would not have been able to lift over 10 lbs. on November 12, 1969, without excruciating pain. He based his opinion on X-rays which he had taken of Strowhorn's arms. Strowhorn denied that he was in any way connected with the burglary and stated that he spent the evening of November 12 with his fiancee. He stated that he saw Webb and Riley (although he did not know their names until after the arrest) and observed them carrying a bag down the stairs in the rooming house where he lived. He stated he was in front of them and shortly after he reached the bottom of the stairs he was arrested. Defendant Harris testified that on the night of November 12, 1969, he was in Big Tom's Lounge until about midnight when he left and went to his room with a girl named Barbara and stayed with her all night. Harris testified he saw the cash register which was admitted in evidence as the one taken from the fruit market in the hall-

way of his rooming house above 552 Cypress the morning of November 13, 1969. He testified also that he saw Webb and Riley carrying a canvas bag down the stairs from the second floor and that he was ahead of them. He stated that Webb and Riley asked him to help them carry the bag and when they had lifted it about 14 inches off the ground they were arrested. He also stated that Strowhorn was not helping with the lifting. Harris also denied having anything to do with the burglary of the Indiana Fruit Market.

Tom Jones, the operator of the dry cleaning establishment, stated that he was in a room above Big Tom's Lounge (the location where Strowhorn and Harris lived) and that while he was in a room in such area he saw a juvenile named Willie Rolly manipulating a cash register similar to the one admitted into evidence. He first stated he saw Strowhorn and Harris in the room but later stated that Harris was "right outside the door behind me.".

An instruction given by the trial court instructed the jury specifically that if it found the defendants knowingly had exclusive possession of recently stolen property, and there was no reasonable explanation of possession, the jury could infer that defendants obtained possession of the property by burglary. The jury returned a verdict of guilty. Defendants moved for a new trial and attached to such a motion an affidavit by Coley Webb wherein he stated that he would testify that at no time did Strowhorn or Harris have possession of the cash register. The motion for new trial was denied and defendants have appealed.

The major issue before us is whether the trial judge properly denied the motion for new trial. The record discloses that there was no evidence which directly placed the defendants in the vicinity of the Indiana Fruit Market the night the market was burglarized and the cash register taken. The prosecution, therefore, was predicated wholly on the premise that there was evidence of recent, exclusive and unexplained possession of stolen property by an accused, jointly with others.

In *People v. Reynolds*, 27 Ill.2d 523, 525–6, the court specifically stated that "Evidence of recent, exclusive and unexplained possession of stolen property by an accused, either singly or jointly with others, may, of itself, raise an inference of guilt absent other facts and circumstances which leave in the mind of the jury a reasonable doubt as to the guilt. (*People v. Pride*, 16 Ill.2d 82; *People v. Strutynski*, 367 Ill. 551)." The key question, therefore, is the question of "possession." (*People v. Garrett*, 115 Ill.App.2d 333, 343.) In the case before us, defendant Harris admitted that he lifted the cash register a few inches off the ground, but stated that he was asked to do so by two other men to help carry the article. Defendant Strowhorn simply admitted he was with the other three men. The evidence showed

he had fractured his wrists and his doctor testified that he could not lift anything over 10 lbs. without severe pain. The officer who testified for the State asserted that he saw Harris, Strowhorn and two other men carry the canvas bag containing the cash register for about 40 yards. Another witness, Thomas Jones, who was the operator of the dry cleaning establishment, placed both Harris and Strowhorn in a room or in or near the door leading to the room in which the cash register was located on a bed before it was brought down the stairs.

A problem involved in the "possession" issue is whether the possession was explained. The only explanation came from defendants themselves and the jury could have disbelieved them. In *People v. Reynolds, supra,* a defendant riding in a car and sitting on automobile batteries that had recently been stolen, testified that the driver of the car merely asked him to ride with him and that he had no knowledge that the articles in the car were stolen. He was convicted of burglary on the theory of recent, exclusive and unexplained possession of stolen property. The Supreme Court sustained such conviction. It was stated that the jury in the *Reynolds* case was not required to believe defendant's explanation of his possession of the goods. To the same effect is *People v. Garrett,* 115 Ill. App.2d 333, in which the defendant testified that someone asked him to help move something and he agreed not knowing what it was. In *People v. Woods,* 26 Ill.2d 557, the defendants told the officers who arrested them that they were eating in a restaurant when a stranger approached them and said he would give them $5 to help him move a radio, television and some other items to his car. They stated they agreed to help him and were carrying the last object, an adding machine, to the car when the police arrived. They denied any knowledge of the burglary. The Supreme Court in such case stated that the jury did not believe the story that they were helping a stranger. The court said that it was within the jury's province to determine the issue and the court could see no reason for disturbing their finding of guilty. While we feel that the jury could have come to a different conclusion in the instant case, we believe that the same principles are required to be applied, and that the jury had the right to disbelieve the testimony of defendants (as well as the alibi evidence which was presented for the period of time during which the burglary had been committed).

A substantial issue in the case is whether the trial judge erred in failing to grant a new trial on the basis of newly discovered evidence when defendants included with their motion an affidavit by Coley Webb, in which Webb stated that on November 13, 1969, he carried the cash register down the stairs with and at the request of Ed Riley, and "at no time did Frank Anderson Strowhorn and Willie Henry Harris have possession or control

of said cash register". One of the fundamental requirements for granting a new trial on the basis of newly discovered evidence is that the evidence must be such as could not have been discovered before the trial by exercise of due diligence. The trial court apparently felt that this requirement was not met in the instant case. The evidence showed that defendants learned the names of the other two men carrying the register a few days after their arrest. A list of witnesses furnished by the State to defendants included the name of Coley Webb, and on the list of alibi witnesses, furnished by defendants themselves to the State prior to trial, the name of Coley Webb was also included. Defendants must have known of the importance of testimony by Webb since it was their theory that they were merely asked to help carry the register. Certainly, the evidence could have been discovered before trial by exercise of due diligence by defendants. It is argued by defendants that they had a subpoena issued for Webb, but Webb could not be found. Webb stated in his affidavit that he was in the county during the time of the trial. If Webb was an important witness for defendants and they depended and relied upon his testimony as material evidence in support of defendants, and, if they could not obtain service upon him, defendants should have requested the court for a continuance or a recess for the purpose of having Webb brought into court. They made no such request during the trial. Courts are reluctant to allow defendants who fail to exercise due diligence to seek out a known witness after a trial and use his affidavit as a basis for seeking a new trial.

■■ Defendants likewise argued that the trial judge erred in failing to grant a new trial on the theory that the State had failed to inform defendants of the existence of a witness favorable to the defense, i.e. Coley Webb. In the list of witnesses furnished by the State, the name of Coley Webb was included but he was not listed as a "favorable" witness nor was any mention made of his probable testimony. Defendants contend that applicable rule is that expressed in *Brady v. State of Maryland,* 373 U.S. 83, 10 L.Ed. 215. In that case the State had withheld a written statement by a person other than the defendant, wherein that person confessed to the crime with which defendant was charged. This was not true in the instant case. Defendants also cite *People v. Hoffman,* 32 Ill.2d 96, where defendant requested that certain undershorts be produced at trial and the State failed to produce them. In the cause before us, there was no showing that the State knew what Coley Webb would say if called as a witness. Webb was arrested at the same time as defendants, but there was no showing that he told the police or the State the same story that he gave in his affidavit. As a consequence, there was no showing that the State, in the cause before us, had anything to suppress. Both defendants were present when Coley Webb carried the cash register down the stairs and

when all four parties were arrested. Presumably, they knew as much about what Coley Webb could testify to, if called as a witness, as the State, since they were present with Webb when the incident occurred which led to their arrest. The requirement that the State must determine which witnesses are "favorable" obviously is limited to situations where it is clear or known to the State that such witness is favorable, and defendants would otherwise know about such witness unless so informed by the State. We must, therefore, conclude that there was no reversible error in the denial of the motion for new trial with respect to the contention relating to the listing of the name of Coley Webb.

■■ Defendants also contend that the court should have granted a new trial on the basis that the State obstructed discovery procedure by giving defendants a list of witnesses that was too long. Defendants had requested the list of witnesses from the State. The State furnished a list of 14 witnesses. Defendants contend that since the list was long, it made discovery impossible. It was shown that all the witnesses listed did have some legitimate knowledge of the crime. Only four witnesses were called by the State to testify at the trial. If the State sought to call any of such witnesses who were not so listed, that witness would have been barred from testifying. If some of the listed witnesses had no knowledge of any pertinent evidence relating to the crime, and this was clear to the State, there might have been some basis for the "long list" contention of defendants on appeal. We, therefore, conclude that there is no basis for reversal on the contention that furnishing of the list of 14 witnesses by the State would tend to obstruct justice. The State apparently furnished as complete a list as it could.

■■ Defendants on appeal also attack the theory of presumed guilt from recent unexplained possession of stolen property on the ground that such presumption is unconstitutional and that an instruction on that issue should not have been given. The contention of defendants is that such rule makes a person guilty until proven innocent in violation of the constitutions of the United States and the State of Illinois. It is also contended that such rule can cause a person to be a witness against himself in violation of the Federal and State constitutions. The Supreme Court of this State settled this issue in *People v. Whittaker* (1970), 45 Ill.2d 491, 259 N.E.2d 787, in which an instruction similar to the one given in the instant case was approved by the Supreme Court. The Supreme Court stated that the permissive inference of guilt, flowing from unexplained possession of recently stolen property, rests on the inherently strong probability of the inferred fact. The court concluded that there is not only a rational connection between possession of recently stolen goods and the inference of guilt, but also, under this particular inference, the fact inferred is more likely

than not to flow from the proved fact upon which it is made to depend. It is true that in the *Whittaker* case only 18 minutes elapsed between the burglary and the time defendants were found with the stolen property, while in the instant case 12 hours elapsed. We do not believe that distinction is significant since other cases have held there is recent possession after many days or weeks. *People v. Pride,* 16 Ill.2d 82 (25 days elapsed); *People v. Malin,* 372 Ill. 422 (6 weeks elapsed).

■■ Although the evidence in the cause which tied defendants to the burglary rests solely on the question of the presence of defendants in or near the stolen article in the rooming house and their participation in moving the stolen article with two other men, a question of fact was created for the jury which the jury had determined adversely to defendants. The jury and the trial court were in a better position to observe the defendants and other witnesses in the case than is this Court on appeal or from a study of the record.

Since we find no reversible error in the record, the judgment of the Circuit Court of Kankakee County will be affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.