THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND KING, Defendant-Appellant.
Third District   No. 77-533

Opinion filed November 30, 1979.

STOUDER, P. J., dissenting.

Robert Agostinelli and Theodore A. Gottfried, both of State Appellate Defender's Office, of Ottawa, and Michael Margolies, law student, for appellant.

William J. Scott, Attorney General, of Chicago (Donald B. Mackay, Melbourne A. Noel, Jr., and Faith S. Salsburg, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the defendant, Raymond King, from his conviction for burglary which was entered in a jury trial in La Salle County Circuit Court. King was charged with the burglary of the residence of Wilbur Heister on the basis of his possession, on the same night as the burglary, of certain items taken from the Heister residence. A rebuttable common law inference, allowing the jury to find burglary when a defendant is found in possession of recently stolen property, not reasonably explained, was the basis for his conviction. The defendant King was sentenced to prison for a term of 4½ to 13½ years. On appeal, the defense attacks the inference, which has been applied in Illinois for many years, as violative of King's constitutional guarantee to due process of law. An additional issue is also raised with respect to an alleged misuse of the grand jury by the prosecution.

The record discloses that on May 20, 1977, Wilbur Heister left his Tonica, Illinois, home about 7 p.m. When he returned home that night around 10:30 p.m., he found that his John Deere riding mower had been stolen and that his house had been ransacked. Items stolen during the burglary included the riding mower, a Hoover vacuum cleaner and a digital clock radio.

The evidence at trial with regard to Raymond King's activities on the night of the burglary came as a result of planned stakeout and surveillance of one Clifford Evelhoch. Officers participating in the stakeout of the Evelhoch residence testified that at about 10:15 p.m. on the night of May 20, 1977, they observed the defendant, Raymond King, and one Robert Housby arrive at the Evelhoch residence in King's pickup truck. They then observed the defendant, King, carry a vacuum cleaner (identified by Heister as the one stolen from his residence) into the Evelhoch residence.

Housby carried the stolen clock radio into the house. Approximately 30 minutes later, King, Housby, Evelhoch and a fourth man exited the residence and drove off in King's truck. They drove to Housby's residence whereupon Housby got out of the pickup and into a van. The men then proceeded, in the two vehicles, to a rural gravel road on the side of which, at one spot, the riding mower was located. They loaded the riding mower into the van and left. Housby drove the van and the others rode in the pickup truck. They then proceeded from the spot alongside of the gravel road to the residence of one Leroy Koch. Koch had apparently arranged to buy the stolen riding mower with a bartender at the Green Front Tavern. At the Koch residence, King and the others unloaded the riding mower from the van. Koch, who testified at trial after having been given immunity, then gave the defendant King a check, made payable to the Green Front Tavern, for "purchase" of the stolen riding mower. Koch had not had previous dealings with King but had been dealing with the bartender at the tavern.

After the sale at the Koch residence, the defendant and the others left and the defendant proceeded to the Green Front Tavern. He later returned to the Evelhoch residence, eventually leaving about 1:30 a.m. In the early morning hours of May 21, 1977, the officers conducting the surveillance returned to the gravel road, where the mower had been loaded into the van, and found various other items taken in the burglary the night before.

Witnesses for the defendant, King, testified, in an attempt to explain King's possession of the items, that King had received a riding mower, a vacuum cleaner and a radio from one Bob Lewis in the early evening of the night of the burglary. The defense produced, in support of that testimony, a bill of sale signed at the defendant's mother's house (co-signed or witnessed by four persons who allegedly saw the sale occur).

After the evidence had been presented and final argument concluded, the jury was instructed on both theft and burglary. Included in the instructions given to the jury was one based upon Illinois Pattern Jury Instruction, Criminal, No. 13.21 (1968), which stated:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary."

Also included in the jury instructions were standard instructions concerning the reasonable-doubt burden of proof upon the State and the defendant's presumption of innocence. The jury returned a verdict finding the defendant, Raymond King, guilty of burglary, and he was sentenced to a term of from 4½ to 13½ years in prison.

The defense's principal argument on this appeal is that the rebuttable common law inference of burglary, which arises from evidence of

possession of recently stolen property, not reasonably explained, is violative of the constitutional guarantee of due process of law. It is the defense position that in order to pass muster under the due process clause the validity of the inference must satisfy the reasonable-doubt standard. That is, the evidence necessary to invoke the inference (arising from the unsatisfactorily explained possession of recently stolen property) must be sufficient for a rational juror to find the inferred fact (herein burglary) beyond a reasonable doubt. The defense contends that the common law inference at issue in the instant case fails to satisfy that standard. The necessity for application of that standard, according to the defense, lies in the constitutional requirement of proof beyond a reasonable doubt and in recent Supreme Court cases dealing with inferences and presumptions in the criminal area. (See *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357; *Turner v. United States* (1970), 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642; *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532.) The State, on the other hand, argues that the criminal common law inference in the instant case need only satisfy a "more likely than not" standard, with the result that the due process clause would not be violated so long as the inferred fact was more likely than not to flow from the established facts. See *Leary v. United States*; *People v. Hood* (1971), 49 Ill. 2d 526, 276 N.E.2d 310; *People v. Harris* (1971), 131 Ill. App. 2d 824, 268 N.E.2d 724.

The central issue thus presented on this appeal is one which has received a great deal of recent attention from both the courts and commentators. However, while a number of States and several courts of appeal of the United States have decided the broad question presented herein, apparently neither the United States Supreme Court, nor any Illinois court, has definitely met the issue. A review of the Supreme Court's pronouncements on the subject is somewhat helpful, and to that we now proceed.

The Supreme Court in *Leary v. United States* was faced with the question as to the constitutionality of the statutory presumption which presumed knowledge of the importation into the United States of marijuana from the mere fact of possession of marijuana. The court was dealing with a rebuttable statutory presumption within the context of criminal sanctions for failure to pay a tax upon the importation of marijuana into this country. The Supreme Court therein stated:

> "* * * a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." (*Leary v. United States*, 395 U.S. 6, 36, 23 L. Ed. 57, 82, 89 S. Ct. 1532.)

While stating and using the more-likely-than-not standard, the court, in a footnote, added:

> "Since we find that the §176a presumption is unconstitutional under this standard, we need not reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use. [Citations.]" (395 U.S. 6, 36 n.64, 23 L. Ed. 2d 57, 82 n.64, 89 S. Ct. 1532, 1548 n.64.)

In *Turner v. United States,* the court considered the constitutionality of instructing a jury that it could infer from possession of heroin and cocaine that the defendant knew the drugs had been illegally imported. The court therein noted that *Leary* reserved the question of whether the more-likely-than-not or the reasonable-doubt standard controlled in the criminal cases, but it likewise found no need to reach that question. The *Turner* court held that the inference with regard to heroin was valid under either standard and that the inference with regard to cocaine was invalid under either standard. (396 U.S. 398, 416, 419, 24 L. Ed. 2d 610, 623, 625, 90 S. Ct. 642, 653, 654.) Then, in *Barnes v. United States* the court was faced with the issue of whether the traditional common law inference permitting guilty knowledge to be inferred from the unexplained possession of stolen goods was consistent with constitutional due process. *Barnes* dealt with the crime of possession of stolen checks knowing them to be stolen, wherein the jury was allowed to infer knowledge from the unexplained possession of recently stolen mail. In that case, the court, while acknowledging that teaching of their previous cases was not altogether clear, refused to expressly resolve the lack of clarity. It stated:

> "What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." (412 U.S. 837, 843, 37 L. Ed. 2d 380, 386, 93 S. Ct. 2357, 2361-62.)

The court then went on to find that the inference therein at issue, in the circumstances of that case, satisfied the reasonable doubt standard, "the most stringent standard the Court has applied in judging permissive criminal law inferences * * *." 412 U.S. 837, 846, 37 L. Ed. 2d 380, 387, 93 S. Ct. 2357, 2363.

The court in *Barnes* also made several observations and findings which are pertinent to the issue raised in the instant case. The court noted that long standing and consistent judicial approval of an instruction,

reflecting as it does accumulated common experience, provides strong indication that the instruction comports with due process. However, it also pointed out that such historical basis is not itself sufficient to establish an instruction's constitutionality, and that common law inferences, like statutory inferences, must satisfy due process standards in light of present-day experience. (412 U.S. 837, 844-45, 37 L. Ed. 2d 380, 386-87, 93 S. Ct. 2357, 2362-63.) In a footnote, the court also stated:

> "The reasoning of the statutory-inference cases is applicable to analysis of common-law inferences. [Citations.] Common-law inferences, however, present fewer constitutional problems. Such inferences are invoked only in the discretion of the trial judge. While statutes creating criminal law inferences may be interpreted also to preserve the trial court's traditional discretion in determining whether there is sufficient evidence to go to the jury and in charging the jury, [citations] such discretion is inherent in the use of common law inferences." (412 U.S. 837, 845, n. 8, 37 L. Ed. 2d 380, 387 n. 8, 93 S. Ct. 2357, 2362 n. 8.)

The *Barnes v. United States* decision is the most recent Supreme Court opinion which specifically and directly addresses the question of which standard with regard to common law inferences is constitutionally required. The court, however, has, in another line of cases, reiterated its position set forth in *In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1078, 1073, that the due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (See *Patterson v. New York* (1977), 432 U.S. 197, 204, 53 L. Ed. 2d 281, 97 S. Ct. 2319.) In *Mullaney v. Wilbur* (1975), 421 U.S. 684, 699-700, 44 L. Ed. 2d 508, 519-20, 95 S. Ct. 1881, 1889-90, the court was faced with a due process attack upon the State of Maine's long-standing common law presumption of malice in a murder case. The presumption became operative if the prosecution proved an intentional and unlawful homicide. Then malice, which was the distinguishing element between murder and manslaughter, was to be conclusively implied unless the defendant proved, by a preponderance of the evidence, that he acted in the heat of passion on sudden provocation. A unanimous court, in striking down the presumption, held that it impermissibly shifted both the burden of production and the burden of persuasion to the defendant. (421 U.S. 684, 700-01, 44 L. Ed. 2d 508, 520-21, 95 S. Ct. 1881, 1890-91.) The court held, emphasizing the requirement of proof beyond a reasonable doubt, that the prosecution must prove, beyond a reasonable doubt, the absence of the heat of passion. (But *cf. Patterson v. New York.*) It quoted from *In re Winship*:

> " 'The requirement of proof beyond a reasonable doubt has [a] vital role in our criminal procedure for cogent reasons. The

accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. . . .

'Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.' " *Mullaney v. Wilbur* (1975), 421 U.S. 684, 699-700, 44 L. Ed. 2d 508, 520, 95 S. Ct. 1881, 1890.

A number of States have seen, in *Leary, Turner* and *Barnes*, and in the decisions emphasizing the constitutional nature of proof beyond a reasonable doubt *(Mullaney; In re Winship)*, a clear requirement that statutory presumptions and inferences and common law inferences must meet the reasonable doubt standard in order to satisfy the requirements of due process. (*State v. McBenge* (1978), ___ Mont. ___, 574 P.2d 260; *State v. Searle* (La. 1976), 339 So. 2d 1194; *State v. Alcantara* (1976), 87 Wash. 2d 393, 552 P.2d 1049; *State v. Williams* (1975), 288 N.C. 680, 220 S.E.2d 558; *Kashansky v. State* (1978), 39 Md. App. 313, 385 A.2d 811; *Patterson v. Commonwealth* (Ky. 1977), 556 S.W.2d 909.) Such a position has also been adopted by two courts of appeal for the United States. (*United States v. Black* (9th Cir. 1975), 512 F.2d 864; *United States v. Johnson* (D.C. Cir. 1970), 433 F.2d 1160.) It can also be said that the great weight of the commentary on this issue argues for the application of the reasonable doubt standard to criminal presumptions and inferences. (Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L. J. 165 (1969); Note, *The Unconstitutionality of Statutory Criminal Presumptions*, 22 Stan. L. Rev. 341 (1970); Christie & Pye, *Presumptions and Assumptions in Criminal Law: Another View*, 1970 Duke L.J. 919; Fuller & Urich, *An Analysis of the Constitutionality of Statutory Presumptions That Lessen the Burden of the Prosecution*, 25 U. Miami L. Rev. 420 (1971); Holland & Chamberlin, *Statutory Criminal Presumptions: Proof Beyond a Reasonable Doubt?* 7 Val. U.L. Rev. 147 (1973); Comment, *Criminal Statutory Presumptions and the Reasonable Doubt Standard of Proof: Is Due Process Overdue?* 19 St. Louis U.L.J. 223 (1974); Comment, *Statutory Criminal Presumptions: Reconciling the Practical with the Sacrosanct*, 18 U.C.L.A. L. Rev. 157 (1970); Comment, *Unburdening the Criminal Defendant: Mullaney v. Wilbur and the Reasonable Doubt Standard*, 11 Harv. Civ. Rights-Civ. Lib. L. Rev. 390 (1976).

Other States have either expressly kept the more-likely-than-not standard articulated in *Leary (People v. McClendon* (1975), 188 Colo. 140, 533 P.2d 923; *Pinkerton v. Farr* (W. Va. 1975), 220 S.E.2d 682), or

they have continued using the more-likely-than-not standard, pending resolution of the question definitively by the United States Supreme Court (*United States v. Tavoularis* (2d Cir. 1975), 515 F.2d 1070; *People v. Gallagher* (1979), 404 Mich. 429, 273 N.W.2d 440).

As noted earlier, the courts which have adopted the reasonable doubt standard, and the commentators urging its adoption, have based their findings (1) upon the re-emphasized constitutional requirement of proof beyond a reasonable doubt, (2) upon the United States Supreme Court's use of the reasonable doubt standard in *Barnes* and *Turner*, and (3) upon an apparent inconsistency in requiring the State to prove every element of an offense beyond a reasonable doubt while at the same time permitting the State to prove the essential elements of a crime through a presumption or inference wherein the connection between the established facts and the presumed fact need only pass the more-likely-than-not standard.

Having broadly surveyed the decisions and commentary elsewhere, we return now to Illinois and the particular common law inference at issue in the instant case. It is clear that the inference of guilt arising from unsatisfactorily explained evidence of the possession of recently stolen property, and an instruction based thereon, have been utilized for many years in this State. (*Jones v. People* (1850), 12 Ill. 259; *People v. Reynolds* (1963), 27 Ill. 2d 523, 190 N.E.2d 301.) While it has more often been used with the inferred crime being theft, it has also commonly been used where the inferred crime is burglary. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. Whittaker* (1970), 45 Ill. 2d 491, 259 N.E.2d 787.) In *People v. Harris* (1971), 131 Ill. App. 2d 824, 268 N.E.2d 724, this court upheld the constitutionality of the common law inference of burglary from possession of recently stolen property in the face of an argument that the inference was unconstitutional in that it violated a defendant's presumption of innocence as well as his fifth amendment right to remain silent. (131 Ill. App. 2d 824, 830-31.) We were not, in *Harris*, faced with the argument that the inference must satisfy a reasonable doubt standard in order to comport with due process requirements. In *Harris* we upheld the use of the inference to support the defendant's burglary conviction. We relied therein on *People v. Whittaker* (1970), 45 Ill. 2d 491, 259 N.E.2d 787, a case in which the supreme court upheld the inference and an instruction thereon in the face of a fifth amendment attack. As we noted in *Harris*, the supreme court in *Whittaker* "stated that the permissive inference of guilt, flowing from unexplained possession of recently stolen property, rests on the inherently strong probability of the inferred fact. The court concluded that there is not only a rational connection between possession of recently stolen goods and the inference of guilt, but also, under this particular inference, the fact

inferred is more likely than not to flow from the proved fact upon which it is made to depend." (131 Ill. App. 2d 824, 830-31.) We would note that in neither *Harris* nor *Whittaker*, so far as the opinions suggest, was there mounted a due process attack based upon the inference's failure to satisfy a beyond-a-reasonable-doubt standard. In any event, both those decisions were issued prior to the United States Supreme Court's decisions in *Barnes v. United States* and *Mullaney v. Wilbur*, the principal cases relied upon by those courts who have invoked the reasonable-doubt standard when measuring the constitutionality of common law inferences or statutory presumptions and inferences. Note should also be taken of our decision in *People v. Davis* (1977), 50 Ill. App. 3d 163, 365 N.E.2d 1135, wherein the question was raised whether a statutory presumption must meet the reasonable-doubt standard or the more-likely-than-not standard. In that case, while noting *Barnes*, we did not reach the issue, since we found a nonconstitutional basis for our decision reversing the defendant's conviction. *People v. Davis* (1977), 50 Ill. App. 3d 163, 167.

A recurring problem with some of the decisions and much of the commentary on the question of which standard to apply to criminal inferences and presumptions lies in the fact that the analyses have proceeded largely upon an abstract, as opposed to a factual, level. Such an approach is clearly the wrong one to take in addressing the important questions involved in this constitutional issue. The use of a common law inference, such as the one with which we deal in the instant case, must be judged within the factual context of the individual case in which it is utilized. That is the approach and analysis taken by the Supreme Court in *Barnes* and that is how the issue has been approached by the Illinois Supreme Court and by this court. (*People v. Hood* (1971), 49 Ill. 2d 526, 276 N.E.2d 310; *People v. Davis*.) Recognition that this is the correct approach can be found also in the Supreme Court's footnote comment in *Barnes* noting lesser constitutional difficulties with common law inferences because they are invoked only in the discretion of the trial judge. (412 U.S. 837, 845 n. 8, 37 L. Ed. 2d 380, 387 n. 8, 93 S. Ct. 2357, 2362 n. 8.) This was also recognized by the New Jersey Supreme Court in *State v. Humphreys* (1969), 54 N. J. 406, 255 A.2d 273, when it concluded that such presumptions and inferences have no probative force independent of the factual contexts within which they are applied. In a similar vein, the Supreme Court of Washington, which early in this decade adopted the reasonable doubt standard, has subsequently stated:

"[I]n none of the cases cited above [those indicating a reasonable doubt standard was required to be applied] have we held that statutory or judicial presumptions are ipso facto unconstitutional. Rather, we have proceeded on a case-by-case basis, considering

the manner which each presumption encroaches upon a defendant's due process rights under the facts of the particular case. This is necessary because not every presumption affects due process rights in the same way. The variances in the 'due process' impact may be caused by the nature of the presumption. Even different facts may have an impact upon our announced general rule." (*State v. Blight* (1977), 89 Wash. 2d 38, 45, 569 P.2d 1129, 1133.)

We find that a case-by-case approach, with the focus being the use of the presumption or inference within the factual context of each case, is the necessary one to follow in assessing the constitutionality of the presumption or inference.

■■ In the instant case, the jury was instructed that it could, on the basis of unsatisfactorily explained evidence of the defendant's possession of recently stolen property, find him guilty of burglary. As considered in the circumstances of the present case, the elements of burglary necessary for the prosecution to prove were: (1) a knowing entry, (2) without authority, (3) into the Heister residence with the intent to commit a theft therein. (Ill. Rev. Stat. 1977, ch. 38, par. 19—1.) An instruction to that effect was given. They were also instructed, both within the burglary instruction and in a separate instruction, that guilt must be proven beyond a reasonable doubt. When the record is examined it becomes clear that there was no direct evidence indicating that King had entered the Heister residence. The evidence that was produced against the defendant was that with regard to his possession of the stolen goods a short time after the burglary. In the circumstances of this case, then, the common law inference was being used to establish the crime charged and its essential elements since there was no other evidence directly establishing those elements. We conclude, that to comport with due process, the common law inference of burglary must satisfy the reasonable-doubt standard. (*Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357; *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881.) Thus, the evidence of the defendant's recent possession of stolen goods must be sufficient for a rational juror to find that the defendant committed the burglary, beyond a reasonable doubt. To allow the State to satisfy their burden of proving all the essential elements of the crime of burglary through the use of an inference which, in the factual context of the case, does not meet the reasonable-doubt standard of proof imposed upon the State would be to deprive the defendant of his due process rights to have the offense proven beyond a reasonable doubt. While the United States Supreme Court has been understandably reluctant to adopt the reasonable-doubt standard as a uniform standard to be applied in all cases

wherein an inference or presumption is used, that court did apply the reasonable-doubt standard in both *Turner* and *Barnes*. It is also clearly the standard applied by the majority of State courts which have addressed the issue. More fundamentally, we believe that application of that standard herein is most consistent with the purposes and concerns underlying the constitutional due process requirement that the defendant in a criminal action be proven guilty beyond a reasonable doubt.

■■ Having determined that the common law inference of burglary arising from recent possession of stolen goods must satisfy the reasonable-doubt standard in this case, we must now turn to the factual context of the case to judge whether that standard has been met. The record shows that the Heister residence was burglarized sometime between 7 p.m. and 10 p.m. on the night of May 20. Among other things taken were a riding mower, a vacuum cleaner and a digital clock radio. At 10:15 p.m. on the night of the burglary the defendant was seen in possession of some of those items. It was at that time that the defendant was observed by police officers (conducting a stakeout at the Evelhoch residence). They observed the defendant, King, and another man arrive at the residence in King's pickup. The two men then carried two articles from the burglary, the vacuum cleaner and the radio, into Evelhoch's house. Within a half hour the two, along with two other men, came out of the house and then drove to another house to pick up a van. They all proceeded then to a rural gravel road where the riding mower had been dropped off after the burglary. They loaded the mower into the van and then delivered it to a buyer who had arranged to purchase the mower from a bartender at an area tavern. The purchaser of the stolen mower gave the defendant, King, the check for the mower, payable to the tavern. King then went to the tavern and eventually back to Evelhoch's house. Thus, the evidence of King's activities does not merely show possession. He had control and possession of two items from the burglary shortly after it had taken place. He was transporting those items to the Evelhoch residence, apparently for safe storage or sale. He delivered the stolen items to the residence. He had knowledge of the location of the stolen riding mower which had been dropped off after the burglary, apparently because of the difficulties of concealment during transport. He returned to the rural location where the mower was located and helped to recover it, load it into the van, and then transport it to the purchaser. He received the check in payment for the delivery of the riding mower. He took the check back to the tavern where the bartender who had arranged for the sale was working that night. We find that with the above established facts as to control and possession by the defendant, a rational juror could infer that the defendant committed the burglary beyond a reasonable doubt. The use of the common law

inference in this case satisfied due process requirements, and the giving of the instruction based upon that inference was not error.

The defense in its brief errs in analyzing the use of the inference divorced from the facts and circumstances shown by the State. It argues that the inference is unconstitutional because it cannot be said beyond a reasonable doubt that a person in possession of recently stolen property committed the burglary in which such property was stolen. That is true but of little help since, as noted, to have probative force the inference must be placed within the facts of the case to which it is applied. The defense makes much of the fact that, had the facts been different, the police might have discovered Koch or Evelhoch in possession of the stolen goods the following morning and that, as applied to them, the inference would also result in a burglary conviction. The obvious answer to such argument is that the evidence establishing the triggering fact of possession was much stronger with respect to the defendant, King, than to either Koch or Evelhoch. The nature and strength of the evidence as to King's possession was sufficient for the trial court to instruct the jury on the common law inference of burglary resulting from possession of recently stolen property.

A secondary argument advanced by the defense in its due process attack is that the inference is impermissible because it shifts the burden of persuasion to the defendant, thus violating his presumption of innocence. The fault in this argument is that it is not the burden of persuasion which is shifted in such cases, but only the burden of production. The burden of persuasion, the requirement that the State prove its case beyond a reasonable doubt, remains at all times with the State. The crucial distinction between the two burdens of proof was recognized by the Supreme Court in *Mullaney* and *Barnes*. Note 31 in *Mullaney* states in part:

> "Generally in a criminal case the prosecution bears both the production burden and the persuasion burden. In some instances, however, it is aided by a presumption, [citation] or a permissible inference, [citation]. These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. [Citation.] Since they shift the production burden to the defendant, these devices must satisfy certain due process requirements." (421 U.S. 684, 703 n. 31, 44 L. Ed. 2d 508, 522 n. 31, 95 S. Ct. 1881, 1891-92 n. 31.)

As an example of the due process requirements when the burden of

production is being shifted, the *Mullaney* court cites to *Barnes v. United States*. Note 11 in *Barnes* contains the pertinent discussion:

"In *Tot v. United States*, 319 U.S. 463 (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. [Citation.] *Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, * * * , there will certainly be a rational connection between the fact presumed or inferred * * * and the facts the Government must prove in order to shift the burden of going forward * * * ." (*Barnes v. United States* (1973), 412 U.S. 837, 846 n. 11, 37 L. Ed. 2d 380, 388 n. 11, 93 S. Ct. 2357, 2363 n. 11.)

Since we have determined that the inference used in the factual context of the case satisfied the reasonable-doubt standard, it follows that there is a rational connection between the fact inferred and the facts the prosecutor proved in order to shift the burden of production to the defendant. We find no constitutional infirmity in the use of the burden in this case.

■ A final argument of the defense in seeking to reverse the conviction of the defendant is that the prosecutor unfairly reconvened the grand jury for the sole or dominating purpose of pretrial discovery after the defendant had been indicted. The defendant, King, was indicted by the grand jury on June 1, 1977. In August 1977, the prosecutor was given, pursuant to Supreme Court Rule 413, a copy of a bill of sale that the defense intended to use in defense at trial. The bill of sale, which purported to be for the items stolen from the Heister residence, was signed by four persons who were allegedly at the defendant's mother's house when the sale was made. After receiving the bill of sale with the names of the signors, the State subpoenaed them to testify before the grand jury. The defense argues that the procedure used is fundamentally unfair in that it violates the defendant's right to confront witnesses and constitutes an abuse of the discovery rules. However, in the present case, the grand jury was involved in a continuing investigation into the May 20, 1977, burglary and theft and in an investigation into the bill of sale which was first produced by the defense on August 12, 1977. It appears from the record that the object of reconvening the grand jury in August was for the purpose of inquiring into possible involvement of additional defendants in the May 20 burglary or into possible criminal acts surrounding that burglary, including, specifically, possible obstruction-of-justice charges against signors of the bill of sale dated May 20. In the circumstances of the case, the grand jury investigation was a legitimate use of the grand jury. (*United States v. Zarattini* (7th Cir. 1977), 552 F.2d 753, *cert. denied*

(1977), 431 U.S. 942, 53 L. Ed. 2d 262, 97 S. Ct. 2661.) We find that there was no abuse of the grand jury which would require that King's conviction be reversed.

For the reasons stated, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

The defendant was charged with burglary, which requires the prosecutor to prove beyond a reasonable doubt that the defendant (1) without authority (2) knowingly entered a building (3) with intent to commit therein a felony or theft. (Ill. Rev. Stat. 1977, ch. 38, par. 19—1.) The prosecutor was unable to directly prove these elements in that there was no evidence which placed the defendant at the scene of the crime. Instead the prosecutor proved that the defendant was in possession of the stolen goods and relied on a common law inference to prove the burglary. The common law inference was embodied in Illinois Pattern Jury Instruction, Criminal, No. 13.21 (1968), which reads:

> "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary."

The defendant produced witnesses who testified that he had bought the goods from one Bob Lewis and produced a bill of sale co-signed or witnessed by four persons who allegedly saw the sale occur. The jury returned a verdict of guilty. I believe the conviction should be reversed and remanded for a new trial.

The use of presumptions in criminal proceedings has long been the source of constitutional problems. These problems arise because our system of criminal justice is a "careful coalescence of a variety of constitutional safeguards" which presumptions tend to undercut. (Comment, *Criminal Statutory Presumptions and Reasonable Doubt Standard of Proof: Is Due Process Overdue?* 19 St. Louis U. L.J. 223 (1974).) For example, in the instant case the prosecution is relieved of the burden of proving all the elements of burglary by simply using the common law inference which arises from unexplained possession of the stolen goods. The majority recognizes that the prosecution is relieved from proving each element of the burglary but then proceeds to ignore the consequences of this issue. Commentators have remarked that the use of criminal presumptions may lead to constitutional problems

regarding due process, the right to a jury trial, a defendant's right not to be compelled to be a witness against himself, and a defendant's right not to have unfavorable comments made on his failure to testify. See Nesson, *Reasonable Doubts and Permissive Inferences: The Value of Complexity*, 92 Harv. L. Rev. 1187 (1979); Comment, *Statutory Criminal Presumptions: Reconciling the Practical With the Sacrosanct*, 18 U.C.L.A. L. Rev. 157 (1970).

Because of these problems, permissive inferences should be used sparingly, if at all. I do not quarrel with the majority's statement that the legal inference arising from the unexplained possession of stolen goods is a permissible one. However, I believe it is inapplicable to the instant case and that the jury instruction embodying it should not have been given.

For purposes of considering the problems surrounding the instruction perhaps an effort to clarify the factual context would be helpful. Generally speaking, we are concerned with the relationship between two facts. Expressed in its simplest terms evidence of fact A, which may be described as the basic fact, the proved fact or the predicate fact, is employed to prove fact B, the presumed fact, because of some supposed relationship between fact A and fact B. In the type of factual context with which we are dealing, fact A is composed of four integral parts, namely (1) possession of (2) stolen property (3) which possession is recent after a burglary and (4) is unexplained. Proof of fact A, meaning all its parts, then is supposed to relate to proof of fact B, which is composed of three integral parts, namely (1) breaking and entering (2) the residence with (3) intent to commit a felony or theft.

At this juncture I believe it necessary to disclaim any disagreement with the proposition that the evidence of possession of stolen property by the defendant has probative value tending to prove the guilt of the possessor. I also believe the probative value of such evidence is increased the shorter the time between the offense and the time of possession and that such probative value is enhanced in proportion to the absence of any explanation of the possession. My initial disagreement stems from the effort to include by way of instruction a judicially mandated value to be accorded evidence which is probative but not conclusive.

Referring back to the problem of proving fact A to prove fact B, several logic problems arise. The majority simply states that "to comport with due process, the common law inference of burglary must satisfy the reasonable doubt standard." But the majority fails to set forth any guidelines for determining what is necessary to meet the reasonable doubt standard. Assuming that it is the burden of the State to prove fact A, what is the degree of proof required? Must the fact be proved beyond a reasonable doubt? Or is it adequate to simply prove it by a preponderance of the evidence or simply by some evidence. It would

seem to be necessary to prove the predicate fact beyond a reasonable doubt in that it would be illogical to say that a presumed fact could be proven beyond a reasonable doubt by merely proving the predicate fact by a preponderance of the evidence or by some evidence. Whatever the quantity of proof ought to be required, neither the presumption instruction nor any other instruction advises the jury on this point. In the absence of such advice, the jury is permitted, and in my judgment, improperly, to establish its own burden of proof where this is substantially the only fact to be proved by the State.

There is also the question of the nature of the burden of proof when there is a dispute about the existence of fact A. For example, in the instant case, the common law inference requires proof of *unexplained* possession of stolen goods. Yet the majority fails to address the problem of what is necessary to prove unexplained possession. Must the State prove that the possession is unexplained? Or need the State only prove possession, which would then shift the burden of production of evidence to the defendant to adequately explain the possession. I believe that allowing the State to merely prove possession is inadequate if the defendant's constitutional rights are to be protected. The burden is on the State to prove every element of the crime beyond a reasonable doubt. If the State is to be permitted to use a "shortcut" it should have the burden of proving every element of the "shortcut" and should have the burden of proving affirmatively that there is no satisfactory explanation for possession.

Professor Nesson goes so far as to state that the only time drawing an inference from a lack of a satisfactory explanation is appropriate is when the prosecution not only proves the predicate fact, but *also* proves affirmatively that there is no satisfactory explanation for it.

> "If there is affirmative evidence on the basis of which the jury can conclude that there is no innocent explanation for the suggestive predicate fact, then a verdict would be warranted beyond a reasonable doubt. * * * The essential point is that the lack of a satisfactory explanation has been demonstrated by the prosecution as part of its case, and not by shifting a burden to the defendant."
> Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv. L. Rev. 1187, 1213-14 (1979).

Even if the predicate fact is proved beyond a reasonable doubt, what relationship must exist between it and the presumed fact so as to prove the presumed fact beyond a reasonable doubt? It seems clear that the proof must be more stringent than a simple "more likely than not" relation. But must the correlation between the facts be 100 percent in order to satisfy the constitutional standard. Is 95 percent adequate? Can it be quantified at all and should it? (See Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical*

*Overview*, 79 Yale L.J. 165 (1969); Christie and Pye, *Presumptions and Assumptions in Criminal Law: Another View*, 1970 Duke L.J. 919; Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv L.R. 1187 (1979).) Again the instruction contains no advice to the jury on how it is to determine the relationship between predicate fact and presumed fact, although the majority seems to indicate this is a factual determination to be made by the jury on an *ad hoc*, case-by-case, basis. Notwithstanding the conclusion in *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357, that the relationship between the predicate fact and presumed fact must exist beyond a reasonable doubt, the case offers no method for determining this relationship. Further questions arise if there is a dispute about the relationship and, if so, what type of burden of proof exists concerning such relationships. These are all problems regarding the presumption which the majority fails to address.

Previously I stated that the failure of the prosecution to prove a lack of satisfactory explanation should preclude the giving of the instruction. In the instant case there is an even stronger argument for not instructing the jury as to the inference. In the instant case the defendant produced evidence of a plausible explanation for his possession of the stolen goods. The defendant introduced a bill of sale attested to by four witnesses who allegedly saw the sale take place.

Assuming for the moment that the prosecution need prove possession of the stolen goods and some evidence that it is unexplained, the issue arises as to what effect the introduction of evidence explaining the possession has on the legal inference. Should the presumption be allowed to stand, or should the introduction of evidence rebutting the predicate fact preclude its being given to the jury? I believe that once evidence has been introduced which would justify the jury in finding the nonexistence of the predicate fact (unexplained possession), then the existence or nonexistence of the predicate fact and presumed fact should be determined as if no presumption had ever been operative, *i.e.*, the presumption should just "drop out" of the case. This approach is known as the pure Thayer rule. The Supreme Court in *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357, cited Thayer's Preliminary Treatise on Evidence with approval, although using it to prove a different point.

The essence of our criminal justice system is the presumption that the defendant is innocent and that the prosecution must prove every element of the crime beyond a reasonable doubt. Dropping the presumption will not deny the jury the power to find the defendant guilty. The jury may still infer the burglary from the possession of stolen goods, for this is a natural inference. At this juncture I believe it important to observe that

the instruction as usually given and the one given in this case is not a neutral instruction. Although the instruction is permissive in the sense that it advises the jury that it "may" find the presumed fact from the predicate fact, it does not advise the jury that it "need not" find the presumed fact. In addition, there is no advice to the jury that it should consider both the predicate fact and the presumed fact with all of the other evidence in the case before deciding on the defendant's guilt. The Supreme Court, in *Tot v. United States* (1943), 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241, has stated that juries are permitted to infer from one fact the existence of another fact essential to guilt if reason and experience support the inference. "In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second." (319 U.S. 463, 467, 87 L. Ed. 1519, 1524, 63 S. Ct. 1241, 1244.) Without the presumption, however, the jury will simply be measuring the evidence the prosecution presents (possession) against the evidence that the defendant presents (an explanation of the possession). There will simply be no instruction putting undue weight on the prosecution's evidence to the detriment of the defendant's case. In the instant case the jury could still infer from the defendant's possession of the goods that the defendant was guilty of burglary. They could weigh the defendant's explanation against this inference and decide if the prosecution had proved the defendant guilty beyond a reasonable doubt. Thus, there was no need for the presumption and since it worked to the defendant's detriment, as shown above, it should not have been given.

For the above reasons I must respectfully dissent and would reverse and remand for a new trial.